NO. 07-07-0046-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 23, 2007

______________________________

UNIVERSITY MEDICAL CENTER, APPELLANT

V.

CARITA ELIZABETH WARD AND DUSTIN WARD, INDIVIDUALLY AND AS BENEFICIARIES OF THE ESTATE OF DYLAN MAC WARD, DECEASED, APPELLEES

_________________________________

FROM THE 237
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-536,174; HONORABLE SAM MEDINA, JUDGE

_______________________________

MEMORANDUM OPINION

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This interlocutory appeal involves a health care liability claim brought by Carita Elizabeth Ward and Dustin Ward against University Medical Center (UMC) regarding the death of their son, Dylan Mac Ward.  Presenting a single issue, UMC contends the trial court erred by overruling its objections to the Wards’ second supplemental expert report filed pursuant to § 74.351 of the Civil Practice and Remedies Code.
(footnote: 1)  We affirm.

On January 10, 2006, Carita arrived at UMC complaining of labor pains.  The initial examination revealed that her cervix was dilated, and nurses attached a monitor to assess the fetal heart rate.  Several hours passed until a doctor re-examined her condition.  Although her labor had not progressed, Carita requested to be transferred to a labor and delivery room.  At 8:10 p.m.,  Dr. Carol Tracy Suit examined Carita and also determined that her labor status had not changed.  As a result, Dr. Suit informed Carita that she was going to be discharged.  Carita, however, requested additional time to see if there would be a change in her condition.  Approximately three hours later, Dr. Suit examined Carita for a second time.  Observing no change in her labor status, Dr. Suit ordered that Carita be discharged.  Carita left UMC at 12:30 a.m. and went home.  One day later, on January 12, Carita returned to UMC complaining of labor pains.  However, after numerous attempts, doctors were unable to detect the fetus’s heartbeat and Dylan was delivered stillborn.  Doctors concluded that the ultimate cause of death was a “true knot” in the fetus’s umbilical cord.

The Wards subsequently filed suit against UMC and Dr. Suit for negligence.  Attached to their original petition was the report and curriculum vitae of the Wards’ expert, Donald J. Coney, M.D.  Among other things, Dr. Coney opined in his report that UMC’s nurses failed to “recognize and respond appropriately to a non-reassuring fetal heart rate pattern” and failed to act as a “patient advocate” by ordering Carita to be discharged.  He further opined that “these actions were directly causative” of Dylan’s death.  In response to the report, UMC filed objections, under § 74.351 of the Civil Practice and Remedies Code, challenging Dr. Coney’s qualifications and his conclusions on the applicable standard of care and causation.  At a hearing, the trial court overruled the qualifications objection and sustained the objections pertaining to standard of care and causation.  Since the trial court’s ruling was within the 120-day window for filing expert reports, UMC did not move for dismissal and the court granted the Wards the remainder of the filing period to amend the report.
(footnote: 2)
 Following the court’s ruling, but prior to 120-day deadline for filing an expert report, 
the Wards submitted a supplemental expert report in which Dr. Coney expanded on decelerations of the fetal heart rate and their correlation to cord compression.  Dr. Coney also elaborated on the standard of care for monitoring these decelerations in order to prevent fetal complications.  He then concluded that if Carita had not been discharged from the hospital, the condition of the fetus would have been timely diagnosed and Dylan would have been delivered “intact.”  However, despite the amendments, UMC continued to object claiming that the supplemental report failed to adequately describe how Dylan’s death was caused by the nurses’ failure to comply with the applicable standard of care.  At a second hearing, the trial court sustained UMC’s objection and granted the Wards a 30-day extension to further supplement the report.
(footnote: 3)  Subsequently, the Wards timely filed their second supplemental expert report, which focused on the implications of the nurses’ breach of the applicable standard of care.  UMC again objected to the adequacy of the report with respect to causation.
(footnote: 4)  The trial court, however, concluded that the report was sufficient and overruled the objection.  UMC now appeals the trial court’s ruling.

By its sole issue, UMC maintains that Dr. Coney’s report, as supplemented, did not satisfy the requirements of § 74.351 because it failed to explain how UMC’s actions or the actions of its nurses caused Dylan’s death.  Consequently, UMC contends the trial court erred by overruling its objections to the Wards’ second supplement expert report.  We disagree.

Section 74.351(l) of the Civil Practice and Remedies Code provides that “[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. . . .”  Section 74.351(r)(6) defines an expert report as follows:

(6) “Expert report” means a written report by an expert that provides a fair summary of the expert’s opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Therefore, the issue we must decide is whether the expert report represents a good-faith effort to comply with the statutory definition.
  Am. Transitional Care Centers of Tex. v. Palacios
, 46 S.W.3d 873, 878 (Tex. 2001).  The only information relevant to this inquiry is that within the document’s four corners.  
Id.

To comply with the statute, the report must contain more than mere conclusions.  
Wells v. Ashmore
, 202 S.W.3d 465, 467 (Tex.App.–Amarillo 2006, no pet.).  To constitute a “good-faith effort,” the report must contain enough information to (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the claims have merit.  
Palacios, 
 46 S.W.2d at 879; 
Bowie Mem’l Hosp. v. Wright
, 79 S.W.3d 48, 52 (Tex. 2002).  The report need not marshal all the plaintiff’s proof, but the expert must do more than merely voice his opinions and conclusions about the standard of care, breach, and causation.  
Bowie,
 79 S.W.3d at 52
.
; 
Palacios, 
46 S.W.3d at 878-79.  We review the trial court's ruling for a clear abuse of discretion.  
See Palacios
, 46 S.W.3d at 878.  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985).  There is no abuse, however, simply because a trial court may decide a matter within its discretion differently than an appellate court.  
Id.
 at 242.

UMC does not dispute Dr. Coney’s qualifications, his opinion on the applicable standard of care, or his opinion regarding whether that standard was breached.  Instead, they contest his opinions with respect to causation.  In that regard, we agree with the trial court that the second supplemental report was sufficient to constitute a good-faith effort to comply with the requirements of § 74.351.  Dr. Coney states in the report that, while Carita was under UMC’s care, her fetal monitoring strip “revealed multiple non-reassuring fetal heart rate patterns.”  He explains that these non-reassuring patterns are frequently associated with cord problems and should have been recognized by the obstetrical nurses.  He then lists seven specific measures that could have been taken to correct the problem and states that, despite the recognizable symptoms, the nurses failed to take any measures and allowed Carita to be discharged.  In addition to citing several failures by UMC’s nurses that he contends were causative of Dylan’s death, Dr. Coney opines that if the nurses had timely recognized the symptoms associated with cord compression and taken the stated measures, there is a high likelihood that the fetus would have been delivered by Cesarean section “alive and intact.”

Nonetheless, UMC insists that the expert report fails to explain how the nurses could have prevented Carita from being discharged or how they would have invoked the hospital’s chain of command.  Similarly, UMC claims the report fails to establish whether the measures proposed by Dr. Coney actually would have resulted in Carita being retained for observation or a successful delivery.  Section 74.351, however, only requires that expert reports provide a “fair summary” of an expert’s opinions on each of the identified elements. The report need not present evidence as if the plaintiff was actually litigating the case on the merits.  
Hardy v. Marsh
, 170 S.W.3d 865, 868 (Tex.App.–Texarkana 2005, no pet.).  
See also
 
Bowie
, 79 S.W.3d at 52-53; 
Palacios, 
46 S.W.3d at 878.  Because the Wards’ second supplemental expert report adequately states Dr. Coney’s opinions with respect to causation, we find the trial court reasonably exercised its discretion when it overruled UMC’s objections.  UMC’s issue is overruled.

Accordingly, we affirm the trial court’s order.

Patrick A. Pirtle

      Justice

      

FOOTNOTES
1:
See 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006).

2:
See 
§ 74.351(a). 

3:
See 
§ 74.351(c).

4:
Although they filed objections to the report, UMC did not move to dismiss the Wards’ claims.  By their brief, UMC admits that such a motion would have been inappropriate given that the deadline for filing expert reports had not yet passed.