**Winnell LEE and Vernon M. Lee, Appellants,**

v.

**Charles D. MITCHELL, Appellee.**

**No. 05–98–00382–CV.**

Court of Appeals of Texas, Dallas.

July 10, 2000.

---

Dale B. Tillery, Tillery & Tillery, Dallas, for Appellant.

Waverly A. Ware, Andrea M. Kuntzman Cataland, Charles T. Frazier, Jr., Cowles & Thompson,. P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, FITZGERALD, and ROSENBERG.[1]

## OPINION

Opinion By Justice ROSENBERG.

Winnell Lee and Vernon M. Lee (the Lees) appeal the trial court's dismissal of their medical malpractice claim against

[1]. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

Charles D. Mitchell, M.D., challenging the trial court's holding that the physician's expert report required by section 13.01(d) of the Medical Liability and Insurance Improvement Act (the Act) must be signed by a physician licensed to practice medicine in Texas. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d) (Vernon Supp.2000). In seven issues, the Lees complain that the Act does not impose a requirement that a physician making an expert report be licensed in Texas; if it is a requirement, their expert report was a good faith effort to comply with the Act, making the report adequate under section 13.01(*l*); and, the imposition of the requirement violates rights guaranteed by the United States and Texas Constitutions and conflicts with the Texas Rules of Evidence. Because the Act does not impose a licensing restriction on the physician expert, the Lees' expert report met the requirements of the Act. We reverse and remand.

## BACKGROUND

On March 18, 1997, the Lees filed suit against Mitchell for medical malpractice. The petition alleged that Mitchell failed to properly diagnose Winnell Lee's shoulder condition. In July 1997, within 180 days of filing the petition, the Lees filed their expert report pursuant to section 13.01(d). The report was prepared by Alexander N. Doman, M.D., a physician licensed in California and Georgia. On August 19, 1997, the Lees supplemented their expert report to include Doman's curriculum vitae, which was mistakenly omitted.

On November 6, 1997, Mitchell filed a motion to dismiss, asserting the expert report was inadequate because Doman was not licensed to practice medicine in Texas. The trial court granted the motion to dismiss. The Lees filed a motion for new trial and a motion to reinstate. The trial court denied the requests. This appeal followed.

## REQUIREMENTS OF THE REPORT

In their first three issues, the Lees assert the trial court erred in dismissing their lawsuit because the trial court did not properly construe and apply the Act's requirements. Specifically, they argue that the Act should not be construed to require a physician be licensed in Texas to provide an expert report against physicians. The Lees argue that this interpretation of the Act is contrary to the legislative intent and the purpose of the Act. Mitchell responds that the legislative intent is irrelevant and that the plain reading of the Act can lead only to the conclusion that a physician licensed in Texas is required for the expert report. Further, Mitchell contends that without a proper expert, the report is not an expert report.

Under the Act, an expert report is "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report...." *Id.* § 13.01(r)(6).[2] An expert is qualified to give an expert report and be an expert witness in a suit against a physician:

only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 14.01(a). Section 14.01 also provides for exceptions to these requirements. *See id.* § 14.01(d). Section 14.01 does not define "physician." However, the original Act, enacted in 1977, included a definition

---

**2.** The opinion must provide the applicable standard of care, the manner in which the care rendered by the physician failed to meet the standard, and the causal relationship be- tween that failure and the injury, harm, or damages claimed. *See id.* § 13.01(r)(6). Mitchell does not complain about the contents of the expert report.

in section 1.03(a)(8) that remains in the Act, stating, " 'Physician' means a person licensed to practice medicine in this state." *Id.* § 1.03(a)(8).

The parties dispute the applicability of the definition of "physician" in section 1.03 to a physician giving an expert report in section 13.01. The Lees argue that the original 1977 bill containing the definition applied only to the regulation of Texas physicians, not to expert witnesses and reports. The expert witness and report sections of the statute were not added until 1989 and 1993, respectively, and were amended in 1995. Mitchell responds that it is presumed when the legislature amended the original Act to add the requirements of an expert report and witness, the legislature knew "physician" was defined in the original section and intended that the term as used in the new section be construed in accordance with that definition.

### Statutory Construction

■ The requirements for an expert report depend on a proper construction of the Act. Matters of statutory construction are questions of law for the court to decide rather than issues of fact. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (per curiam); *Maley v. 7111 Southwest Freeway, Inc.,* 843 S.W.2d 229, 232 (Tex.App.-Houston [14th Dist.] 1992, writ denied). We review questions of law *de novo. See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996) (op. on reh'g). Well-settled rules of statutory construction dictate that we must give effect to the intent of the legislature. *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993). A statute "shall be liberally construed to achieve [its] purpose and promote justice." TEX. GOV'T CODE ANN. § 312.006 (Vernon 1998). If the statutory language is unambiguous, we determine the legislative intent from the plain and common meaning of the words of the statute. *See Monsanto Co.,* 865 S.W.2d at 939; *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990); *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). However, where the application of the statute's plain language would lead to absurd consequences that the legislative body could not possibly have intended, we do not apply the statutory language literally. *See Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991) (citing *McKinney v. Blankenship,* 154 Tex. 632, 642, 282 S.W.2d 691, 698 (1955)).

■ We may also look to the Code Construction Act to provide guidance in construing a statute. *See* TEX. GOV'T CODE ANN. §§ 311.001–.003 (Vernon 1998); *Thiel v. Harris County Democratic Executive Comm.,* 534 S.W.2d 891, 894 (Tex.1976) (orig.proceeding). The Code Construction Act provides that, when the legislature enacts a statute, it is presumed:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998). The Code Construction Act further provides that when construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction; . . . .

*Id.* § 311.023 (Vernon 1998). Thus, while not controlling or binding, we consider legislative history to determine legislative intent. *See Calvert v. Audio Ctr., Inc.,* 346 S.W.2d 420, 423 (Tex.Civ.App.-Austin 1961, writ ref'd n.r.e.). Legislative history includes the enactment history of a statute, that is, actions taken and statements made during legislative consideration. *See, e.g., Quick v. City of Austin,* 7 S.W.3d 109, 123 (Tex.1998) (considering floor debates, committee hearings, and bill analyses as legislative history); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.04, at 431–36 (6 th ed.2000).

### Discussion

█ The Act originated as House Bill 1048 in the 65 th Legislature, which convened in 1977. *See* Act of May 30, 1977, 65 th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039–64 (codified at TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 1–12.01 (Vernon Supp.2000)). "Physician" was defined in section 1.03. TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(8) (Vernon Supp.2000). As stated in the bill analysis, the purpose of the bill was to reduce physicians' insurance rates. *See* HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 1048, 65 th Leg., R.S. (1977). The Act provided protection to physicians by pre-suit notice, restrictions on the application of the common-law doctrine of *res ipsa loquitur* and the statute of limitations, and implementation of damage caps. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 4.01, 7.01, 10.01, 11.02 (Vernon Supp.2000).

In 1995, section 13.01 was amended to require the filing of an expert report, and section 14.01 was amended regarding the qualification of a physician as an expert witness in physician malpractice suits. *See* Act of May 5, 1995, 74 th Leg., R.S., ch. 140, §§ 1–2, 1995 Tex. Gen. Laws 985–88 (codified at TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 13.01, 14.01 (Vernon Supp. 2000)).[3] Those amendments originated in House Bill 971, which, as introduced, required the expert physician to hold "a license to practice in this state at the time the claim arose." Tex. H.B. 971, 74 th Leg., R.S., § 5 (1995). However, the bill enacted into law did not have the Texas licensure restriction. *See* Tex. H.B. 971, 74 th Leg., R.S., 1995 Tex. Gen. Laws 985– 88. Thus, during the legislative process, the Texas licensure requirement was eliminated from this section of House Bill 971. In the March 22, 1995 hearing in the House Committee on Civil Practices regarding House Bill 971, Paul Sadler, a committee member, and Mike Hull, a member of the Texas Association of Defense Counsel who helped draft the amendment, discussed the standards required of an expert:

> Sadler: What are the standards? The reason I ask is I noticed in the original bill they had to be a resident, uh ... licensed, uh, doctor within the State of Texas.
>
> Hull: That's out.
>
> Sadler: Good. ·

*The Medical Liability & Insurance Improvement Act: Hearings on Tex. H.B. 971 Before the House Comm. on Civil Practices,* 74 th Leg., R.S., tape 3, side B (March 22, 1995). Other discussion concerned the expertise and training that qualified the physician as an expert. In addition, the bill analysis reflects that the definition of expert physicians was meant

---

**3.** Section 13.01, added in 1993, originally provided for an affidavit. The 1995 amendment deleted the affidavit and added the requirement of an expert report. *See* Act of May 25, 1993, 73d Leg., R.S., ch. 625, § 3, sec. 13.01, 1993 Tex. Gen. Laws 2347–49 (amended 1995) (current version at TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2000)). The definition of "expert" in section 13.01(r)(5)(A) requires that the expert giving opinion testimony regarding a physician's breach of the standard of medical care be a physician. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(5)(A). Section 14.01 was added in 1989. Act of May 26, 1989, 71 st Leg., R.S., ch. 1027, § 27, sec. 14.01, 1989 Tex. Gen. Laws 4128, 4145 (amended 1995) (current version at TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01 (Vernon Supp.2000)).

to "ensure they are qualified and knowledgeable in the area in which they are testifying." HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B. 971, 74th Leg., R.S. (1995). Further, Senator David Sibley, a sponsor of the bill, explained the legislative history and intent of the expert requirements in a 1997 letter:

> When the bill was initially filed, it required specifically that an expert witness against a physician on standard of care issues be a physician "who held a license to practice in this state at the time the claim arose." I was persuaded ... that this was too restrictive since both plaintiffs and defendants in medical malpractice litigation in Texas commonly utilize highly qualified expert witnesses who are licensed in states other than Texas. Accordingly, before the bill was passed in the House of Representatives, a committee substitute was adopted which, among other things, deleted the "Texas" restriction. It definitely was not my intent nor that of the legislature in voting for this amending legislation that only physicians licensed in Texas could qualify as expert witnesses on the standard of care issues.

Letter from David Sibley to Harold Freeman and James Fields (Aug. 4, 1997).

In 1999, the legislature again amended section 14.01 to add subsection (g), which states:

> (g) In this section, "physician" means a person who is:
>
> (1) licensed to practice medicine in the United States; or
>
> (2) a graduate of a medical school accredited by the Liaison Committee on Medical Education or the American Osteopathic Association.

Act of May 13, 1999, 76th Leg., R.S., ch. 242, § 1, 1999 Tex. Gen. Laws 1104–05 (codified at TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(g) (Vernon Supp.2000)). The bill analysis states that the reason for this definition was to effectuate the intent of the 1995 legislature to allow physicians licensed in states other than Texas to qualify as expert witnesses. *See* HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B. 504, 76th Leg., R.S. (1999).

■ The deletion of the Texas licensure requirement from the original version of the 1995 bill shows a clear legislative intent not to impose the requirement. *See Transportation Ins. Co. v. Maksyn,* 580 S.W.2d 334, 338 (Tex.1979) ("The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal."); *see also Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (every word excluded from a statute must be presumed to have been excluded for a purpose). Further, the committee hearings reflect that it was the legislature's intent not to impose a Texas licensure requirement for the expert physician. While the view of the house committee is not controlling in the interpretation of this statute, its view of the requirement and its favoring the elimination of the requirement are entitled to great respect and should have some weight in arriving at a proper construction of the Act. *See National Carloading Corp. v. Phoenix–El Paso Express,* 178 S.W.2d 133, 137 (Tex. Civ.App.-El Paso), *aff'd,* 142 Tex. 141, 176 S.W.2d 564 (1943). Next, although the intent of an individual legislator, even a statute's principal author, is not legislative history, it is persuasive evidence here that the legislature did not intend and did not provide a Texas licensure requirement. *See General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex.1993); *Houston Bank & Trust Co. v. Lee,* 345 S.W.2d 320, 323 (Tex.Civ.App.-Houston 1961, writ dism'd); *see also* TEX. GOV'T CODE ANN. § 311.023(2) (circumstances under which statute was enacted may be considered in construing statute). Finally, the subsequent act of the 1999 legislature in amending the statute to make clear that the expert required by section 14.01 need not be licensed in Texas is highly persuasive evidence that the legislature did not intend to impose the requirement. *See Texas Water Comm'n v. Brushy Creek Mun.*

*Util. Dist.,* 917 S.W.2d 19, 21 (Tex.1996) (a legislature's later interpretation of the meaning of an existing law is highly persuasive); *Caples v. Cole,* 129 Tex. 370, 376, 102 S.W.2d 173, 176–77 (1937) (same); 1A SINGER, *supra,* § 22.31, at 279 (5th ed.1993).

This history shows a legislative intent not to require that a physician making an expert report under section 13.01(d) be Texas-licensed. This is consistent with the purpose of the statute to reduce medical malpractice claims without unduly restricting a claimant's rights any more than necessary to deal with the medical malpractice insurance crisis. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02(b)(1), (3) (Vernon Supp.2000). Mitchell, however, argues that the interpretation that a Texas license is required also meets the purpose of the Act in limiting medical malpractice cases. But Mitchell's interpretation would require us to ignore the legislative history and circumstances of the enactment of the physician expert requirement and its subsequent amendment and the statements of a sponsor of the bill. We decline to ignore this history and these circumstances to effectuate a Texas licensure requirement that was not intended by the legislature, would limit a plaintiff's ability to provide a qualified physician expert more than necessary, and represents a more restrictive standard than the supreme court has required of expert medical witnesses since section 14.01 was enacted.[4]

We presume that the legislature intended a just and reasonable result when it enacted and amended the Act. *See* TEX. GOV'T CODE ANN. § 311.021. Considering the legislature's intent that physician experts in medical malpractice cases be qualified, a Texas licensure requirement does not result in any kind of requisite expertise or meaningful qualification. *See id.* § 312.005. Further, we will not apply the

statutory language literally where the application of the Act's plain language leads to consequences that the legislature could not have possibly intended. *See Sharp,* 815 S.W.2d at 249. Therefore, we hold that a physician making an expert report under section 13.01(d) of the Act is not required to be a physician licensed in Texas. Accordingly, the Lees' report met the definition of an expert report and was timely filed. We resolve the Lees' first three issues in their favor.

### CONCLUSION

Having resolved the first three issues in favor of the Lees, we need not address their other issues. *See* TEX.R.APP. P. 47.1. We reverse and remand this cause for further proceedings consistent with this opinion.

---

4. *See Broders v. Heise,* 924 S.W.2d 148, 153 (Tex.1996) (holding rules of evidence require that an expert has " 'knowledge, skill, experience, training, or education' regarding the

specific issue before the court which would qualify the expert to give an opinion on that particular subject").