NO. 07-06-0232-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 15, 2006
_____

GUY A. WELLS, M.D.,

Appellant

v.

MARY ASHMORE, individually and as surviving spouse of
LAWRENCE ASHMORE, deceased, and FRANCES MCFARLAND,

Appellees
_____

FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-532,780; HON. RUBEN REYES, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This appeal involves a health care liability claim prosecuted by Mary Ashmore, individually and as surviving spouse of Lawrence Ashmore, deceased, and Frances McFarland (collectively referred to as Ashmore). Guy A. Wells, M.D., (Wells) appeals from an order denying his objections to the medical expert report of Ashmore. He contends that the trial court abused its discretion in denying his objections because the report "fail[ed] to set forth the element of causation in a non-conclusory manner as required by *American*

*Transitional Care Centers v. Palacios,* and its progeny." We agree and reverse the order.

*Background*

Lawrence Ashmore was diagnosed with a heart attack in Artesia, New Mexico, and transferred to Covenant Hospital in Lubbock, on September 5, 2003. At the time, he was under the care of Wells. On the night of the 5th, Lawrence developed seizures and irregular heart rhythms and died the next day. His surviving wife and daughter then sued Wells for failing to provide adequate care to him.

Dispute arose below regarding the sufficiency of the expert report tendered by Ashmore per §74.351 of the Texas Civil Practice and Remedies Code. According to Wells, it failed to adequately explain, among other things, how the alleged deficiencies in his performance caused Lawrence's death. Because of that perceived defect, Wells moved to dismiss the case with prejudice. The trial court denied the motion, and the appeal ensued.

*Applicable Law*

One suing for medical malpractice must:

> [n]ot later than the 120th day after the date the original petition was filed, serve on each party . . . one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted . . . .

TEX. CIV. PRAC. & REM. CODE ANN. art. §74.351(a) (Vernon Supp. 2006). Should the claimant not do so and upon motion, the trial court must enter an order 1) awarding the movant reasonable attorney's fees and costs of court incurred and 2) "dismiss[ing] the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." *Id.* §74.351(b)(1) & (2). On the other hand, if the report is filed yet challenged,

2

the challenge must be sustained and the cause dismissed ". . . if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report . . . ." *Id.* §74.351(l); *see Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex. 2003) (stating that the cause must be dismissed if the trial court determines that the report does not represent a good faith effort to comply with the definition of an expert report). Moreover, the term "expert report" has been defined by statute to mean "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed." *Id.* §74.351(r)(6).

To constitute a "fair summary" of the expert's opinions, the document must contain more than conclusions. *Bowie Memorial Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001). Instead, the expert must provide enough data to not only inform the defendant of the specific conduct called into question but also provide the trial court means to preliminarily assess whether the claim has factual basis. *Bowie Memorial Hospital v. Wright,* 79 S.W.3d at 52; *Chisholm v. Maron,* 63 S.W.3d 903, 906 (Tex. App.–Amarillo 2001, no pet.). For instance, in *Bowie*, the expert "simply opine[d] that [the patient] might have had 'the possibility of a better outcome' without *explaining* how Bowie's conduct caused injury . . . ." *Bowie Memorial Hospital v. Wright*, 79 S.W.3d at 53 (emphasis added). Given the missing explanation, the report "lack[ed] information linking the expert's conclusion . . . to Bowie's alleged breach . . .," according to the Supreme Court. *Id.* So too did the missing information render the document conclusory, the court continued, and something short of

3

"a good faith effort to meet the Act's requirements." *Id.* at 54. Thus, it determined that dismissal of the suit was mandated. *Id.*

So, what we learn from *Palacios, Bowie,* and like opinions is that to be sufficient an export report must include more than the mere statement that a purported breach of an applicable standard of care caused a particular outcome. Rather, information explaining the link between the standard of care, its breach, and the ensuing injury must be contained within its four corners. So, when addressing the topic of causation, an expert is required to provide some factual information describing how and why the breach resulted in the injury. And, while this explanation need not equate a marshaling of evidence, *Rittmer v. Garza,* 65 S.W.3d 718, 723 (Tex. App.–Houston [1st Dist.] 2001, no pet.), it must be more than conclusions.

*Application of the Law*

The expert report at bar was provided by Dr. Howard I. Kurz. In it, he stated the standards of care applicable in circumstances confronting Wells. So too did the expert specify the manner in which Wells allegedly breached those standards. Yet, when it came to connecting the purported defaults to the death of Lawrence, he opined:

> Mr. Ashmore would within a reasonable degree of medical certainty survivedhad the above mentioned measures been performed upon arrival. However, it is still possible he would have survived had Dr. Wells responded and taken appropriate measures when first paged by nursing staff.
>
> *   *   *
>
> It is my opinion that Dr. Wells breached the applicable standard of care in his treatment of Mr. Ashmore . . . and these acts of or omissions proximately caused Mr. Ashmore's death . . . .

4

Missing from these opinions is information explaining the link between the alleged defaults committed by Wells and Mr. Ashmore's death. Simply put, how or why they resulted in his death went unmentioned. Similarly unmentioned by Kurz is the condition of which Lawrence ultimately died. This is of import because elsewhere in his report the expert uttered that 1) increased doses of levophed and dopamine were administered to Mr. Ashmore "which lead to peripheral vasoconstriction and hypoperfusion as manifested my [sic] mental confusion and kidney shutdown" and 2) administering "large doses of pressors caus[ed] tissue hypoperfusion with kidney shutdown." Had the expert related that death resulted from vasoconstriction, hypoperfusion, mental confusion, or kidney shutdown, then it may be arguable that the report illustrated the requisite nexus between the purported conduct of Wells and the death of his patient. But, without specifying whether Ashmore died of heart failure, kidney failure, mental confusion, a combination of one or more of those conditions or of something else, Kurz provided us with no factual data tying the administration of those drugs to Lawrence's death. Simply put, without knowing what Lawrence ultimately died of we are left to only guess at the relationship between supposed bad acts on the part of the doctor and the death.

In sum, the allegations made by Kurz regarding causation were mere conclusions because they did not explain how the purported defaults caused Lawrence's death; the expert merely concluded that they did. *See Nelson v. Ryburn,* No. 07-05-0166-CV, 2006 Tex. App. LEXIS 3081 at *7 (Tex. App.–Amarillo April 18, 2006, no pet.). So, the report fell short of constituting a good faith effort to provide a fair summary between the alleged misconduct of Wells and its relationship to Mr. Ashmore's death, and the trial court had no discretion but to sustain Wells' objections.

5

Accordingly, we reverse the order of the trial court denying Wells' objections to the report and remand the cause for further proceedings.[1]

Brian Quinn
Chief Justice

---

[1]Statute provides that if "an expert report has not been served within the period specified . . . because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN.§74.351(c) (Vernon Supp. 2006). Omitted from this language is that found in its predecessor and requiring the claimant to have acted without intent or conscious indifference before leave to amend could be granted. *See* TEX. REV. CIV. STAT. ANN. 4590i, §13.01(g) (repealed effective September 1, 2003) (stating that leave to amend could be granted if the default was not intentional or the result of conscious indifference but rather the result of accident or mistake). Furthermore, Ashmore solicited, here and below, leave to cure any deficiency found in the report tendered. Given the request, we deem it appropriate to remand the cause so the trial court may decide whether to exercise the discretion vested in it by §74.351(c).