NO. 07-07-0424-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 4, 2008

_____


WILLIAM EUGENE SPRINGER, M.D., LUBBOCK HEART HOSPITAL,
CARDIOLOGISTS OF LUBBOCK, P.A., JOSEPH A. RIZZO, M.D.
AND ROBERTO E. SOLIS, M.D.,  APPELLANTS

V.

JOYCE JOHNSON, APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-537,597; HONORABLE BILL SOWDER, JUDGE,

_____

Before QUINN, C.J., and PIRTLE, J., and BOYD, S.J.[1]


**OPINION**


This appeal involves the statutory construction of the term "physician" as used in

Chapter 74 of the Texas Civil Practice and Remedies Code, specifically § 74.351(r)(5)(C),

_____

[1]John T. Boyd, Chief Justice (Ret.) sitting by assignment.

as it pertains to the qualifications of an "expert" for purposes of an expert report on the issue of the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in a health care liability claim. Appellants, William Eugene Springer, M.D., Lubbock Heart Hospital, Cardiologists of Lubbock, P.A., Joseph A. Rizzo, M.D., and Roberto E. Solis, M.D. (hereinafter collectively referred to as the Medical Group), contend the term "physician" means an individual licensed to practice medicine *in this state,* as defined by § 74.001(a)(23)[2] (emphasis added). Medical Group appeals from an order denying their objections to the sufficiency of the expert report served by Appellee, Joyce Johnson, in support of her medical malpractice suit. Medical Group contends the trial court erred in denying their objections because: (1) Johnson's expert report failed to demonstrate that its author was qualified to provide an opinion on the issue of causation because he is not licensed to practice medicine in Texas and (2) the report addressed the applicable standard of care, purported breaches, and causation in a conclusory manner. We affirm.

**Background**

In October 2004, Johnson was admitted to the Lubbock Heart Hospital where she underwent cardiac surgery to replace a defective heart valve with a mechanical one. Prior to surgery her attending physicians discontinued her anticoagulant therapy. During her

---

[2]Unless otherwise indicated, this and all future section references are to Tex. Civ. Prac. & Rem. Code Ann. (Vernon 2005).

hospital stay, Johnson alleges her physicians and health care provider neither restarted her therapy nor properly monitored her condition. Three days later, after her surgery was completed, she was discharged and allegedly received no prescription or instructions to resume her anticoagulant therapy. At her post-discharge appointment at Dr. Springer's office, her staples were removed; however, she did not see a doctor, and her therapy was not resumed. On November 16, 2004, Johnson suffered a stroke.

Johnson filed a medical malpractice action against Medical Group alleging they failed to properly monitor her condition, coordinate her care, and/or resume her anticoagulant therapy thereby causing her stroke. Medical Group responded with general denials and Johnson timely served her expert report in accordance with § 74.351(a). Thereafter, Medical Group filed objections to the sufficiency of her expert report and moved for dismissal pursuant to § 74.351(b). The trial court denied their objections whereupon they filed this interlocutory appeal.

**Discussion**

Medical Group contends that an "expert" for purposes of an expert report on the issue of the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in a health care liability claim is a "physician" as defined by § 74.001(a)(23), which by definition would only include an individual licensed to practice medicine in this state. Medical Group asserts Dr. Neal Shadoff, the author of Johnson's expert report, is unqualified to issue an opinion on

3

causation because he is not licensed to practice medicine in Texas.  Shadoff is licensed

to practice medicine in New Mexico, Colorado, and North Carolina.  Certain members of

Medical Group[3] next assert Johnson's report is deficient because the report explains their

standard of care, purported breaches, and causation in a conclusory fashion by ascribing

an identical standard of care to three physicians (Rizzo, Solis, and Springer), treating them

collectively in describing the breach and failing to address causation.

## I.      Interlocutory Appeal

Appellate courts have jurisdiction to consider immediate appeals of interlocutory

orders only if a statute explicitly provides appellate jurisdiction.  *Stary v. DeBord,* 967

S.W.2d 352, 352-53 (Tex. 1998); *In re Estate of Hersey,* 223 S.W.3d 457, 459

(Tex.App.–Amarillo 2006, no pet.).   Section 51.014(a)(9) of the Civil Practice and

Remedies Code authorizes an appeal from an interlocutory order issued by a district court

denying a motion asserting that a timely filed expert report is deficient under § 74.351(b).

Accordingly, we have jurisdiction to consider this appeal.  *See Lewis v. Funderburk,* 51

Tex. Sup. Ct. J. 747, 2008 WL 1147188, *2 (Tex. Apr. 11, 2008);  *Wells v. Ashmore,* 202

S.W.3d 465, 467 (Tex.App.–Amarillo 2006, no pet.).

---

[3]While all Appellants raise the first issue, Springer and Lubbock Heart Hospital do not join in the second issue raised by Solis, Cardiologists of Lubbock, P.A., and Rizzo.

4

## II.      Statutory Construction

Statutory construction is a question of law for the court, *City of Lubbock v. Adams,* 149 S.W.3d 820, 826-27 (Tex.App.–Amarillo 2004, pet. denied), which we review de novo. *Texas Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex. 2002); *Oak Park, Inc. v. Harrison,* 206 S.W.3d 133, 137 (Tex.App.–Eastland 2006, no pet.).  Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent.  *Texas Dept. of Protective and Regulatory Services v. Mega Child Care*, 145 S.W.3d 170, 176 (Tex. 2004); *Texas Dept. of Public Safety v. Coers,* 153 S.W.3d 632, 633 (Tex.App.–Amarillo 2004, no pet.).

To discern the Legislature's intent, we begin with the plain and common meaning of the statute's words.  *Texas Dept. of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex. 2004).  If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.  *Needham,* 82 S.W.3d at 318.  If the statutory language is unambiguous, we must adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results.  *Mega Child Care,* 145 S.W.3d at 177.  We must also consider the statute as a whole rather than its isolated provisions, *City of Sunset Valley,* 146 S.W.3d at 643; *City of Canyon v. Fehr,* 121 S.W.3d 899, 905 (Tex.App.–Amarillo 2003, no pet.), and "not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to

5

such a construction standing alone." *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001).

Although a statute is not ambiguous on its face, we may also "consider other matters in ascertaining the Legislature's intent, including the objective of the law, the legislative history, and the consequences of a particular construction." *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003) (citing Tex. Gov't Code Ann. § 311.023(1), (3), (5)). Furthermore, we must presume the Legislature intends an entire statute to be effective and that a just and reasonable result is intended. Tex. Gov't Code Ann. § 311.021(2), (3) (Vernon 2005).

Subchapter I of Chapter 74 of the amended Medical Liability and Insurance Improvement Act of Texas[4] entitled "Expert Witnesses" establishes expert witness qualifications for suits involving health care liability claims.[5] Specifically, Subchapter I

---

[4]Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985 (Tex. Rev. Civ. Stat. Ann. art. 4590i § 14, Subchapter N), *repealed and recodified by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10, 2003 Tex. Gen. Laws 847 (current version at Tex. Civ. Prac. & Rem. Code § 74.401-403).

[5]The term "health care liability claim" is defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

establishes qualifications for expert witnesses testifying in suits against physicians (§ 74.401) and health care providers (§ 74.402), as well as for expert witnesses on causation (§ 74.403). The qualifications for an expert witness on causation are, in pertinent part, as follows:

> Except as provided by Subsections (b) and (c), in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only *if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.*

§ 74.403(a) (emphasis added).

The expert opinion of a physician, *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949), qualified to testify under Texas Rule of Evidence 702;[6] *Broders v. Heise,* 924 S.W.2d 148, 151-52 (Tex. 1996), has long been required in suits involving health care liability claims.

---

§ 74.001(a)(13).

[6]This Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702 (Vernon 2003).

Subchapter I of the Act defines a "physician" as follows:

In this subchapter, "physician" means a person who is:

> (1) licensed to practice medicine in one or more states in the United States; or
>
> (2) a graduate of a medical school accredited by the Liaison Committee on Medical Education or the American Osteopathic Association only if testifying as a defendant and that testimony relates to that defendant's standard of care, the alleged departure from that standard of care, or the causal relationship between the alleged departure from that standard of care and the injury, harm, or damages claimed.

§ 74.401(g).

Thus, if we apply the plain language of § 74.403(a) coupled with the applicable definition of the term "physician" in § 74.401(g), an expert witness testifying on causation in a suit involving a health care liability claim against a physician and/or a health care provider is qualified as an expert witness if he is a physician licensed to practice in one or more states in the United States and is otherwise qualified under the Texas Rules of Evidence. This interpretation comports with the applicable legislative history and case law.[7]

---

[7]Although three appellate courts have considered issues related to the qualification of proposed causation experts in suits involving health care liability claims, statutory interpretation of the applicable provisions of Chapter 74 was unnecessary because the courts ultimately determined that the purported experts were not licensed as physicians in *any* state. *See Cuellar v. Warm Springs Rehabilitation Foundation,* No. 04-06-00698-CV, 2007 WL 3355611, *2-3 (Tex.App.–San Antonio Nov. 14, 2007, no pet.); *Fontenot Enterprises, Inc. v. Kronick,* No. 14-05-01256-CV, 2006 WL 2827415, *2-3

When the Act was initially passed to require the filing of early expert reports rather than affidavits, the Act amended prior provisions related to expert witness qualifications in Article 4590i, § 14.01,[8] but failed to define the term "physician." Although the bill, as introduced, initially required a physician expert to hold "a license to practice in this state at the time the claim arose,"[9] the bill enacted into law did not contain such a restriction. *See* Tex. H.B. 971, 74th Leg., R.S., 1995 Tex. Gen. Laws 985-88.

Despite elimination of a Texas licensure requirement for physician-experts from the bill, the Legislature's failure to specifically define "physician" for the purpose of expert witness qualification led to the advancement of a legal argument that all expert testimony must be provided by a physician licensed to practice medicine in Texas through the application of the general definition of "physician" contained then in Article 4590i, § 1.03(a)(8), currently § 74.001(a)(23). *See* Paula Sweeney, *Medical Malpractice Expert Testimony*, 41 S. Tex. L. Rev. 517, 520 (2000). *See also* David F. Johnson, *Exploring The Expert Report of 4590i*, 54 Baylor L. Rev. 359, 366 (2002).

---

(Tex.App.–Houston [14th Dist.] Oct. 5, 2006, no pet.); *Randalls Food and Drugs, I.P. v. Kocurek,* No. 14-05-01256-CV, 2006 WL 2771872, *3 (Tex.App.–Houston [14th Dist.] Sept. 28, 2006, no pet.).

[8]Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Gen. Laws 985, 986 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)).

[9]Tex. H.B. 971 74th Leg., R.S., § 5 (1995).

The Legislature found the Texas state licensure requirement overly restrictive, and the Act was amended again in 1999 to broaden the requirement for physician experts to include licensure in other states as follows:

> In 1999, the legislature again amended section 14.01 to add subsection (g), which states: "In this section, "physician" means a person who is: (1) licensed to practice medicine in the United States . . . ." Act of May 13, 1999, 76th Leg., R.S., ch. 242, § 1, 1999 Tex. Gen. Laws 1104-05 (codified at Tex. Rev. Civ. Stat. Ann. art. 4590i, § 14.01(g) (Vernon Supp. 2000). The bill analysis states that the reason for this definition was to effectuate the intent of the 1995 legislature to allow physicians licensed in other states other than Texas to qualify as expert witnesses. *See* House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 504, 67th Leg., R.S. (1999).

*Lee v. Mitchell,* 23 S.W.3d 209, 214 (Tex.App.–Dallas 2000, pet. denied).

After a detailed analysis, the *Lee* court concluded that the Legislature's deletion of the Texas licensure requirement from the original version of the 1995 bill evidenced a clear legislative intent not to impose the requirement and recognized the subsequent amendment in 1999 to include physicians licensed to practice medicine in the United States as "highly persuasive evidence that the Legislature did not intend to impose the requirement." *Id.* at 215 (citing *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.,* 917 S.W.2d 19, 21 (Tex. 1996)). Thus, the *Lee* court held that "a physician making an expert report under section 13.01(d) of the Act is not required to be a physician licensed in Texas." *Id.* at 215.[10]

---

[10]Prior to any legislative guidance or the *Lee* opinion, Texas courts qualified physician-experts in malpractice cases that were licensed in states other than Texas. *See*

10

We find that the subsequent repeal of § 14.01(g) and its recodification in 2003 as § 74.401(g)[11] further evidence of a clear legislative intent that physician-experts in medical malpractice cases may be licensed in states other than Texas. While leaving the language of the general definition of "physician" in § 1.03(a)(8) unaltered after its recodification as § 74.001(a)(23), the Legislature further clarified the definition of "physician" in § 14.01(g) ("person who is licensed to practice medicine in the United States"), in its recodification as § 74.401(g) ("person who is licensed to practice medicine *in one or more states* in the United States [emphasis added]") to more clearly express its intent that physician-experts in medical malpractice actions be qualified if licensed in states other than Texas.

However, Medical Group asserts the definition of "physician" in § 74.001(a)(23)[12] must necessarily be applied to qualify a physician as a causation expert for the purpose of expert reports served pursuant to § 74.351(a) in Subchapter H, Procedural Provisions.

---

*Lee v. Andrews,* 545 S.W.2d 238, 245 (Tex.App.–Amarillo 1977, writ dism'd) (citing *Hart v. Van Zandt,* 399 S.W.2d 791, 798 (Tex. 1965)).

[11]Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws, 847.

[12]Under Subchapter A, General Provisions, "physician" is defined, in pertinent part, as follows:

> (a) In this chapter,
>
>> (23) "Physician" means:
>>> (A) an individual licensed to practice medicine in *this state*;

§ 74.001(a) (emphasis added).

Because § 74.001(a)(23) applies throughout Chapter 74, Medical Group asserts its definition of "physician" applies in Subchapter H rather than the definition in *§ 74.401(g)* of Subchapter I, Expert Witnesses. They contend the prefatory language contained in § 74.401(g), "[i]n this section," limits its application exclusively to Subchapter I. Medical Group also asserts their interpretation is bolstered because the qualifications for an "expert" regarding the standard of medical care for claims against a physician or a health care provider in § 74.351(r)(5) are qualified by citation to provisions in Subchapter I while the qualifications for an "expert" on causation are not so qualified.[13] Medical Group

---

[13]The term "experts" as it applies to expert reports required by § 74.351(a), is defined, in pertinent part, as follows:

> (r) In this section,
>
> (5) "Expert" means:
>
> (A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, *an expert qualified to testify under the requirements of Section 74.401*;
>
> (B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, *an expert qualified to testify under the requirements of Section 74.402*;
>
> (C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, *a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence*;

(emphasis added).

12

contends that omission of a citation to § 74.403 following the definition of a causation expert in § 74.351(r)(5)(C) evidences the Legislature's intent that the general definition of "physician" in 74.001(a)(23) control licensure requirements for causation experts submitting expert reports pursuant to § 74.351(a) rather than the definition of "physician" in § 74.401(g) applicable through § 74.403.

Medical Group's interpretation ignores the Act's clear legislative history on this point as well as sidesteps well-established rules of statutory construction. "A fundamental and universally accepted rule of construction is that a general provision must yield to a succeeding specific provision dealing with the same subject matter." *Forwood v. City of Taylor,* 147 Tex. 161, 214 S.W.2d 282, 285-86 (1948). Moreover, when the law makes a general provision, apparently for all classes, and a special provision for a particular class, the general must yield to the special insofar as the particular class is concerned. *City of Dallas v. Mitchell,* 870 S.W.2d 21, 23 (Tex. 1994) (citing *Sam Bassett Lumber Co. v. City of Houston,* 145 Tex. 492, 198 S.W.2d 879, 881 (1947)).

In accordance with these well-established rules, the general definition of a "physician" applicable to Chapter 74 as a whole must yield in § 74.351(r)(5)(C) to the special definition of "physician" in § 74.401(g) specifically drafted to apply to expert witnesses for applicable standard(s) of care and causation. A specific statute such as the physician-expert definition in § 74.401(g) more clearly evinces the intention of the Legislature on expert witness qualification than the general definition of "physician" in §

74.001(a)(23). *See* 67 Tex. Jur. 3d *Statutes* § 123 (2003). This is particularly so where the Legislature has chosen to use the identical language or phrasing to describe expert witness qualification for causation issues as a physician who is "otherwise qualified to render opinions" on causal relationships under the Texas Rules of Evidence in *both* statutes, § 74.351(r)(5)(C) and § 74.403(a). "When construing a statutory word or phrase, a court may take into consideration the meaning of the same or similar language used elsewhere in the act." *Guthery v. Taylor,* 112 S.W.3d 715, 721 (Tex.App.–Houston [14th Dist.] 2003, no pet.); 67 Tex. Jur. 3d *Statutes* § 105.

That "expert" qualifications for drafting a report regarding the standard of medical care for claims against a physician or a health care provider are followed by citations to Subchapter I while qualifications for an "expert" on causation are not, is of no moment. Citing the applicable statutory provisions in Subchapter I related to expert opinion testimony regarding whether a physician or health care provider departed from accepted standards of medical care in § 74.351(r)(5)(A) and (B) respectively, is necessary in order to incorporate their many statutory requirements for qualifying such witnesses under the applicable statutes, §§ 74.401 and 74.402 respectively. However, the phrase "physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence" in § 74.351(r)(5)(C) is all that is necessary to incorporate the entirety of the requirements for qualification of an expert witness on causation in § 74.403, including the definition of "physician" in § 74.401(g). That the identical language of § 74.403 follows as a matter of course in § 74.351(r)(5)(C) after similar provisions of

14

Subchapter I are cited in (A) and (B) of the same statute is a further indication the Legislature intended the qualification of an expert witness on causation under § 74.351(r)(5)(C) to be governed by § 74.403.[14]

This is particularly so when the limiting language in § 74.403(a), "[e]xcept as provided by Subsections (b) and (c)" is considered.  Thus, except in instances where health care liability claims are asserted against dentists, § 74.403(b), and podiatrists, §74.403(c), a person may *only* qualify as an expert witness on the issue of causation in a suit involving a health care liability claim if the person is a physician licensed to practice medicine in one or more states in the United States and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.  §§ 74.403(a), 74.401(g).  Clearly, the statute's plain language indicates that § 74.403(a) applies in any suit involving a health care liability claim other than those specifically excluded by the prefatory *proviso*.  The mere omission of a citation to § 74.403(a) at the end of § 74.351(r)(5)(C) cannot contravene the statute's plain language and clear legislative intent as Medical Group suggests.

---

[14]It is also worth noting that § 74.351 does not purport to define the term "physician," but "expert."  Section 74.351(r) is also prefaced by language, "[i]n this section," limiting the applicability of its defined terms to § 74.351 only.  Due to this limiting language, use of the definition of a causation expert contained in §§ 74.403 and 74.401(g) does not conflict with the overall applicability of the definition of "physician" in § 74.001(a)(23) as a general definition applicable to Chapter 74.  In addition, this interpretation keeps all references to "physician" as an expert witness in a health care liability claim or suit consistent throughout Chapter 74.

Accordingly, this issue is overruled.

### III.    Sufficiency of Johnson's Expert Report

Under § 74.351(r)(6), an expert report is defined as "a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed."  In its entirety, the report must represent an objective good faith effort to comply with this definition.  *Id.* at § 74.351(l).

To constitute a "good faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *American Transitional Care Ctrs. of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001).  When assessing the report's adequacy, the trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners.  *Palacios,* 46 S.W.3d at 878.

Although the report must contain an expert opinion on each of the elements identified in the statute–standard of care, breach and causation–the "plaintiff need not present evidence in the report as if it were actually litigating the merits."  *Id.* at 878-79. Although its adequacy "does not depend on whether the expert uses any particular

16

'magical words,'" *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex. 2002), the expert must provide enough data to inform the defendant of the specific conduct called into question and provide the trial court means to preliminarily assess whether the claim has a factual basis. *Wells v. Ashmore,* 202 S.W.3d 465, 467 (Tex.App.–Amarillo 2006, no pet.); *Chisholm v. Maron,* 63 S.W.3d 903, 906 (Tex.App.--Amarillo 2001, no pet.).

The issue then for this Court is whether the trial court abused its discretion by finding Johnson's expert report represented an objective good-faith effort to comply with the statutory definition of an "expert report." *Bowie,* 79 S.W.3d at 52. A trial court abuses its discretion if it acts in an arbitrary manner without reference to any guiding rules or principles. *Id.*

Shadoff's expert report indicates Johnson suffered from paroxysmal atrial fibrillation, an abnormal heart rhythm alternating between a normal heart rhythm, and she underwent a combined coronary bypass graft and aortic valve replacement while at Lubbock Heart Hospital. He opines that these two facts are clinical indicators establishing a compelling and absolute need for anticoagulation therapy using warfarin because (1) an aortic valve replacement significantly increased her risk of thromboembolism, *i.e.* clot formation in a blood vessel that breaks loose and is carried by the blood stream until it eventually plugs another blood vessel, and (2) her paroxysmal atrial fibrillation added to that risk. Shadoff further opines that Johnson should have been prescribed warfarin and aspirin. He states that Springer, Johnson's cardiac surgeon, and Rizzo and Solis, her attending cardiologists,

17

were under a duty to coordinate an appropriate plan for their patient's care which would have included coordinating care between themselves as well as employees and agents of Lubbock Heart Hospital. He further opines they were also under a duty to supervise anticoagulation management of Johnson utilizing a combination of warfarin and aspirin.

Shadoff opines this duty was breached when Johnson was released from the hospital without any anticoagulation therapy, *i.e.* a prescription for warfarin or aspirin. In his opinion, Johnson should have been scheduled for a subsequent blood test to monitor her anticoagulation. In addition, the medical records available to Shadoff did not contain any notes documenting a plan for outpatient anticoagulation. Shadoff cites to publications of the American College of Cardiology/American Heart Association that indicate: (1) the risk of an embolic episode increases significantly for patients receiving a mechanical aortic valve replacement without warfarin therapy, and (2) patients with a mechanical aortic valve and an increased risk factor such as atrial fibrillation should receive aspirin. He further opines that Springer, Rizzo, and Solis knew or should have known when she was discharged on October 20 that her warfarin therapy had been discontinued while in the hospital on October 17, and knew or should have known the probable consequences of her discharge without proper anticoagulation and monitoring.

Following her discharge on October 20, Johnson suffered a stroke on November 16. Shadoff's report states that he "is quite certain that the stroke . . . was an embolic event with the embolus arising from the mechanical aortic valve prosthesis." He further opines

18

that the event "was caused by lack of appropriate coagulation in a clinical circumstance where anticoagulation with warfarin is absolutely indicated." He opines that "the breach of the standard of care owed by Springer, Rizzo, and Solis / Cardiology Associates of Lubbock,[15] as well as Lubbock Heart Hospital and its nurses resulted in Johnson's stroke." He further opines as follows:

> If Ms. Johnson had been appropriately anticoagulated, more likely than not a stroke would not have occurred. In the absence of the stroke occurring, I would have expected Ms. Johnson to recuperate from her surgery and have had overall improvement in her functional status.

Solis, Rizzo, and Cardiologists of Lubbock, P.A. contend Shadoff's report is deficient because he "lumps" them together and assigns each of them the same duties and obligations. According to Shadoff's report, Johnson was under the care of attending cardiologists Solis, Rizzo, and Cardiologists of Lubbock, P.A. while receiving treatment at Lubbock Heart Hospital. As such, he opines they shared responsibility for Johnson's care. His report names the individual treating physicians, states what standard of care they should have provided and how they failed to provide that care. Accordingly, we conclude that grouping Solis, Rizzo, and Cardiologists of Lubbock, P.A. together under the relevant standard of care does not render Shadoff's report inadequate simply because the same

---

[15]Although Dr. Shadoff's expert report refers to Cardiology Associates of Lubbock, the named defendant was Cardiologists of Lubbock, P.A. Because the *Defendants Roberto E. Solis, M.D. and Cardiologists of Lubbock, P.A.'s Objection to Plaintiff's Expert Report and Motion to Dismiss* did not object to this misnomer as a basis for the insufficiency of Dr. Shadoff's report, for purposes of this opinion, we will treat the report as if it had properly designated Cardiologists of Lubbock, P.A. *See* Tex. R. Civ. P. 71.

standard of care is applied to each. *See In re Stacy K. Boone, P.A.,* 223 S.W.3d 398, 405-06 (Tex.App.–Amarillo 2006, no pet.) (holding single standard of care applied to defendant doctors and physician's assistant sufficient because all were involved in administering treatment).

The cases relied upon by Solis, Rizzo, and Cardiologists of Lubbock, P.A. are inapposite. *See Kettle v. Baylor Medical Center at Garland,* 232 S.W.3d 832, 838-39 (Tex.App.–Dallas 2007, no pet.); *Gray v. Chca Bayshore L.P.,* 189 S.W.3d 855, 859 (Tex.App.–Houston [1st Dist.] 2006, no pet.); *Taylor v. Christus Spohn Heath Sys. Corp.*, 169 S.W.3d 241, 246 (Tex.App.–Corpus Christi 2004, no pet.); *Rittmer v. Garza,* 65 S.W.3d 718, 722-23 (Tex.App.–Houston [14th Dist.] 2001, no pet.); *Whitworth v. Blumenthal,* 59 S.W.3d 393, 396 (Tex.App.–Dallas 2001, pet. dism'd).

In *Kettle* and *Gray*, the appellate courts held the expert reports were deficient because they failed to give an explanation of the treatment required to fulfill the applicable duty. *Kettle*, 232 S.W.3d at 838-839 (report merely stated physicians had a duty to diagnose and treat patient's condition); *Gray,* 189 S.W.3d at 859 (report stated only that physicians and nursing staff had duty to monitor). Here, Shadoff's report states the standard of care, the clinical indicators that should have prompted treatment (patient with newly implanted aortic mechanical prosthesis and history of atrial fibrillation), and the treatment that should have been administered (warfarin therapy with a prescribed low dose aspirin) to satisfy the duty of care.

Recognizing that an expert report must contain a standard of care for each defendant, *Taylor* does not expressly prohibit applying the same standard of care to more than one health care provider if, as in the present case, they all owed the same duty to the patient. *See Taylor*, 169, S.W.3d at 245-46. *Rittmer* does not apply because the appellant admitted the report failed to meet the causation element while the report lacked specificity as to the standard of care applicable to different portions of surgery performed by two physicians. 65 S.W.3d at 722-23. In *Whitworth*, the report completely failed to identify any particular defendant to which it applied. 59 S.W. 3d at 398. Here, Shadoff's report offers specific guidance as to what should have been done differently by Solis, Rizzo, and Cardiologists of Lubbock, P.A. to meet their individual duty of care. *See Palacios,* 46 S.W.3d at 880. In sum, we cannot say the trial court abused its discretion by finding Johnson's expert report constituted a good faith effort to set forth the applicable standard of care for Solis, Rizzo, and Cardiologists of Lubbock, P.A. *See Boone,* 223 S.W.3d at 405-06.

Neither can we say that the trial court erred by finding Johnson's expert report met the breach and causation requirements as to Solis, Rizzo, and Cardiologists of Lubbock, P.A. Having opined as to their duty of care and the care required to fulfill that duty, Shadoff opines these Appellants breached their duty by failing to coordinate her care, prescribe an anticoagulation therapy of warfarin and aspirin on discharge, schedule a subsequent blood test to monitor anticoagulation, or establish an outpatient plan for such treatment. As a result, Shadoff opines Johnson suffered an embolic event, or stroke, with the "embolus

arising from the mechanical aortic valve prosthesis" due to lack of appropriate anticoagulation.[16]

Here again, the report adequately informs Solis, Rizzo, and Cardiologists of Lubbock, P.A. of the specific conduct Johnson calls into question. That the report also includes these defendants with Springer does not render its discussion of the alleged breaches inadequate. The Shadoff report links the harm to the breach in a manner that is not merely conclusory. *See Boone,* 223 S.W.3d at 406-07; *Wells,* 202 S.W.3d at 467. While Solis, Rizzo, and Cardiologists of Lubbock, P.A. disagree with the amount of detail in the report, an expert report required by § 74.351(a) need not be formal and its information need not meet the evidentiary requirements required in a summary judgment proceeding or at trial. *Palacios,* 46 S.W.3d at 879. We conclude the trial court did not abuse its discretion by finding the Shadoff report constitutes a good faith effort to inform Solis, Rizzo, and Cardiologists of Lubbock, P.A. of the specific conduct called into question and provides a sufficient basis to conclude that the claims against them have merit.

---

[16]Shadoff's statement that, while Johnson's injury was caused by a stroke due to an embolus arising from the mechanical valve, he "cannot exclude a concomitant paroxysm of atrial fibrillation, as well," does not render his report conclusory under *Bowie* as Solis suggests. The *Bowie* Court held the expert report was deficient on causation where the report simply opined that the patient might have had "the possibility of a better outcome" if an x-ray had been read properly without explaining how Bowie's conduct caused injury to the patient. 79 S.W.3d at 53. Just because Shadoff also describes the possibility there was a subordinate or incidental cause for her harm does not render his expert report conclusory. This is particularly so where Shadoff also states that the prophylactic treatment with anticoagulation is the same for either condition.

For the first time on appeal, Cardiologists of Lubbock, P.A. also assert Johnson's report is technically deficient because the report mentions "Cardiologists Associates of Lubbock" and not the named defendant in the suit, "Cardiologists of Lubbock, P.A." In addition, Solis also asserts that, even if vicarious liability is being asserted by Johnson against Cardiologists of Lubbock, P.A., a proper expert report has not been provided to Solis. The record does not reflect that these arguments were plead or presented to the trial court for a ruling. To preserve error for appeal, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity and complies with the rules of evidence and procedure. *See* Tex. R. App. P. 33.1(a). If an argument is presented for the first time on appeal, it is waived. *Id.*; *Marine Transport Corp. v. Methodist Hospital,* 221 S.W.3d 138, 147 n.3 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

Accordingly, this issue is overruled.

**CONCLUSION**

Having overruled Medical Group's issues, we affirm the trial court's order.

Patrick A. Pirtle
Justice

Quinn, C.J., concurs in the result.

23