Patricia KETTLE, Individually and as Executrix of the Estate of Raymond Kettle, Deceased, Linda Hill, Dianne Frankhouser, Margaret Sullivan, Thomas Kettle, and Sandy Roache, Appellants

v.

BAYLOR MEDICAL CENTER AT GARLAND, Abdul Kader Ezeldin, M.D., Cardiology Consultants of North Dallas, P.A., Kanti Lal Agrawal, M.D., and Michael Motta, M.D., Appellees.

No. 05–05–01260–CV.

Court of Appeals of Texas, Dallas.

Aug. 27, 2007.

Robert L. Greening, Penick & Greening, Dallas, TX, for Appellant.

John R. Owen, Owen & Fazio, P.C., Michael S. Holloway, Joann N. Wilkins, Burford & Ryburn, L.L.P., William H. Chamblee, David M. Walsh, IV, Chamblee & Ryan, Stan Thiebaud, Stinnet, Thiebaud & Remington, Dallas, TX, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and O'NEILL.

## OPINION

Opinion By Justice O'NEILL.

After Raymond Kettle (Kettle) died, his survivors (the Kettles) brought this wrong-

ful death and survival action alleging medical negligence by Baylor Medical Center at Garland (Baylor), Cardiology Consultants of North Dallas, P.A. (Cardiology), Abdul Kader Ezeldin, M.D. (Ezeldin), Kanti Lal Agrawal, M.D. (Agrawal), and Michael Motta, D.O. (Motta). The trial court dismissed the Kettles' claims with prejudice under the Medical Liability and Insurance Improvement Act of Texas (MLIIA) (former TEX.REV.CIV. STAT. art. 4590i, § 13.01) for failure of the Kettles' pre-trial expert reports to satisfy its requirements. In two groups of eight issues addressing each defendant, the Kettles argue the court abused its discretion in (i) dismissing the claims and (ii) refusing to grant an extension under MLIIA § 13.01(g) to file amended reports meeting the statutory requirements. We affirm in part and reverse in part and remand.

## BACKGROUND

Kettle had chronic obstructive pulmonary disease (COPD). The Kettles allege that two days after he was implanted with a cardiac pacemaker he suffered "cardiac tamponade" and died. They generally allege (i) inadequate and non-timely assessment and reporting by Baylor nurses of his condition and symptoms to physicians for prompt treatment and (ii) inadequate and non-timely diagnosis and treatment by Drs. Ezeldin, Agrawal, and Motta. They allege Cardiology and Baylor are liable through actual or ostensible agents or employees in the course and scope of employment. They filed *curricula vitae* and expert reports from cardiologist/internist Dr. Marc Cohen (Cohen) and registered nurse Debra L. Pugh (Pugh); both experts stated they reviewed the medical records.

## EXPERT REPORT REQUIREMENTS

The parties agree that the Texas Medical Liability and Insurance Improvement Act at former TEX.REV.CIV. STAT. art. 4590i (MLIIA) (current version at TEX. CIV. PRAC. & REM.CODE ch. 74) applies and governs the Kettles' health care liability claims, because they filed suit before it was repealed. MLIIA § 13.01(d)(1) requires health care liability claimants to furnish an expert report with the expert's *curriculum vitae* within 180 days of filing suit "for each physician or health care provider" sued. "Expert report" is defined as a written

fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

MLIIA § 13.01(r)(6).

The supreme court has outlined the standard governing sufficiency of MLIIA expert reports. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001) (*Palacios*). A report must be a "good-faith effort" at a "fair summary" of the expert's opinions. *Id.* To do that it must discuss (1) standard of care (2) breach and (3) causation with "sufficient specificity" to (i) inform the defendant of the conduct the plaintiff calls into question and (ii) provide a basis for the trial court to determine whether the claims have merit. *Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006); *see Palacios,* 46 S.W.3d at 875, 879. A report omitting any statutory requirement cannot be a good faith effort. *Palacios* at 879. A "fair summary" is "something less than a full statement" but it must "set out what care was expected, but not given," *id.* at 880, and must describe the standard and state how it was breached. *Id.* at 879 (citations omitted).

■ Conclusory reports do not satisfy MLIIA. *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002) (per curiam) (citing *Palacios,* 46 S.W.3d at 879). Reports must explain their bases to link conclusions to facts. *Bowie,* 79 S.W.3d at 52 (citing *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999)). Reports failing to explain how a breach caused injury are reasonably found conclusory. *See Bowie* at 53.

■ Under MLIIA §§ 13.01(e)(3), (*l*), on motion a trial court shall dismiss a suit with prejudice either where a report is untimely or where a timely report, after a hearing, appears to the court to not adequately represent a good faith effort to comply with the expert report definition at MLIIA § 13.01(r)(6). MLIIA § 13.01(g) mandates granting one 30–day grace period to meet its expert report deadline if after a hearing the trial court finds that failure to do so was not intentional or consciously indifferent but accidental or mistaken. The grace period is available to cure inadequate but timely filed reports. *Walker v. Gutierrez,* 111 S.W.3d 56, 61 (Tex.2003).

### STANDARD OF REVIEW

We review both a dismissal under MLIIA and refusal to grant a grace period to cure expert report deficiencies for abuse of discretion. *Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006) (per curiam). We may find abuse of discretion where a trial court acts arbitrarily or unreasonably or without reference to any guiding rules or principles, or fails to correctly determine, analyze, or apply the law, but we may not substitute our judgment in deciding discretionary matters. *Cayton v. Moore,* 224 S.W.3d 440, 444–45 (Tex.App.-Dallas 2007, no pet.). Mere error in judgment is not abuse of discretion, but a decision with no

basis in reason or law is. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917–18 (Tex.1985). A trial court has "no discretion" to find adequate conclusory reports that do not notice the conduct complained of. *Palacios,* 46 S.W.3d at 880.

■ In evaluating a report's sufficiency, we are confined to its four corners. *Palacios,* 46 S.W.3d at 878. That bars us from drawing inferences to supply absent necessary information. *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex. 2002) (per curiam). Reports are not construed in favor of the plaintiff. *Windsor v. Maxwell,* 121 S.W.3d 42, 50 (Tex.App.-Fort Worth 2003, pet. denied).

### DISCUSSION

#### *Drs. Ezeldin and Agrawal*

For liability of Drs. Ezeldin, Agrawal, and Motta (and vicarious liability of Cardiology), the Kettles rely on Dr. Cohen's report. Motta is discussed separately below as he abandoned any standard of care, breach, and causation challenges to Cohen's report in the trial court and in his brief to this Court and argues only that Cohen did not demonstrate he was qualified to opine. Ezeldin and Agrawal do not object to Cohen's qualifications. Though the Kettle's petition alleges Dr. Rolando Solis (Solis) negligently implanted a pacemaker in Kettle when there was "no indication for one," and though Cohen includes Solis with the other physician-defendants in discussing their conduct, Solis's conduct is not at issue as he is not a party to this appeal.

■ *Dr. Cohen's report.*[1] The report's "case summary" states Kettle's COPD was advanced but far from end stage; notes a CAT scan and echocardiogram showed a new pericardial effusion; and notes pro-

---

1. Dr. Cohen's report is unsigned.

gressive hypotension for about a seven hour period before he arrested. The substance of his opinion on standard of care, breach, and causation on the two courses of conduct alleged to be negligent may be summarized in pertinent part:

- **Documenting indication for a pacemaker implant.** Cohen opines that Drs. Solis, Ezeldin,[2] and Agrawal, and Cardiology, all collectively owed a duty to "fully document" a "clear cut" indication for implanting a pacemaker. He states Kettle "[was] referred for" a pacemaker and opines that Solis, Ezeldin, Agrawal, and Cardiology all collectively breached the standard of care because a pacemaker "was implanted" without "adequate" indication. He opines that the implantation "resulted in pericardial tamponade and death."

- **Treating pericardial tamponade.** Cohen opines that Drs. Solis, Ezeldin, Agrawal, and Motta, and Cardiology and Baylor,[3] all collectively owed a duty to "promptly consider, diagnose, and then treat," with "pericardiocentesis," Kettle's "pericardial tamponade" that was causing his "progressive hypotension." He states all defendants collectively breached the standard of care because "[m]ore than six hours passed before any intervention related to the diagnosis of effusion … was entertained." He states Kettle was "not in imminent danger of dying from his COPD," opines that failing to "promptly" perform pericardiocentesis caused Kettle's death, and opines that "earlier" pericardiocentesis would have "stabilized [his] blood pressure and saved his life."

A standard of care that only requires physicians to "fully document" indications for implanting a pacemaker is at best ambiguous. For example, the report does not explain how documenting relates to recommending or ordering; i.e., it does not link documenting to implanting. It is silent on who recommended or ordered the implant, stating only that Kettle "[was] referred for" it. It is silent on the implanting physician. It does not state what must be documented, what is sufficient, to whom it must be directed, explain how its insufficiency led to wrongful implantation, or describe its intended purpose or effect. Moreover, it does not state the indications for pacemaker implants and is silent on the standard for assessing them. It does not opine that the implantation itself was negligently performed or explain how this implant caused the complications alleged. We conclude this portion of the opinion identifies no discernible standard of care satisfying *Palacios* and does not explain causation as the supreme court required in *Bowie*, 79 S.W.3d at 53.

Cohen's opinion that all the physician-defendants collectively shared the same duty to diagnose and treat Kettle's condition "promptly" or "earlier" is also too vague and general to satisfy *Palacios*. It

2. The Kettles do not appear to assert any claim against Ezeldin related to the pacemaker implantation or rely on that portion of Cohen's report for any liability attributed to him but appear to limit their pacemaker implantation claim to Agrawal and Cardiology. This does not affect our underlying analysis of the sufficiency of the report.

3. While Cohen's report opines Baylor was collectively negligent with the physicians in diagnosing and treating a medical condition, the Kettles do not allege this and we disregard it. This portion of the report is also immaterial because medical diagnosis or treatment is practicing medicine, which hospitals are not licensed to do. *See Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 415 (Tex.App.Fort Worth 2003, no pet.).

could be stated that *every* physician has a general duty to diagnose or treat medical conditions timely but that truism does not inform the physician-defendants what the standard specifically required them to do. It is conclusory. *Cf. Whitworth v. Blumenthal*, 59 S.W.3d 393, 396–97 (Tex.App.-Dallas 2001, no pet.) (en banc) (expert opining, *inter alia*, complications "should have been anticipated" and "appropriate therapy provided" conclusory). Without *"specific* information about what the defendant should have done differently" one cannot determine whether a duty was breached. *Palacios*, 46 S.W.3d at 880 (emphasis added) (holding opinion that "restraints and precautions to prevent [patient's] fall were not properly utilized" was conclusory and "not a statement of a standard of care.").

This report states: "More than six hours passed before any intervention related to the diagnosis of effusion ... was entertained." This is just a statement of an occurrence that does not specify who had a duty to do what and when. The report does not specify the steps that should have been taken to diagnose Kettle's condition for timely intervention and does not specify a standard for determining what intervention is timely. In other words, there is no breach alleged that relates to a defined standard of care. Merely stating a particular condition should be timely treated with a particular procedure is insufficient to meet *Palacios*. *Cf. Eichelberger v. St. Paul Med. Ctr.*, 99 S.W.3d 636, 639 (Tex. App.-Dallas 2003, pet. denied) (report simply opining standard requires providing certain treatment not given is conclusory and deficient for not "summariz[ing] the ways in which any of the[m] ... breached the standard"). "A trial court does not abuse its discretion in dismissing a suit in which one is required to infer the standard of care from the allegations in the expert report." *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 343 (Tex.App.-Texarkana 2004, pet. denied) (merely detailing omissions "does not state what conduct was necessary or required").

### Reports Lumping Defendants Inadequate

■ Cohen's report is independently deficient in lumping all the physician-defendants together, without describing their individual roles in Kettle's care. The report identifies no practice specialty of any defendant. The report does not opine but requires us to infer that the same standard applies to each of them and that they all breached it in the same way.

■ MLIIA expressly requires submitting a report "for each physician or health care provider" sued. MLIIA § 13.01(d)(1). Reports must "notify[ ] each defendant of the specific conduct called into question...." *See Whitworth v. Blumenthal*, 59 S.W.3d 393, 396–97 (Tex. App.-Dallas 2001, no pet.) (en banc) (finding inadequate opinion globally opining group of providers breached standard without specifying which defendant standard applies to and who was responsible for the care). Each provider's individual treatment must also be causally linked to the damages claimed. *Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

■ Plainly, different specialists may be involved in a given patient's care. While it is certainly *possible* an identical standard of care governs different providers, a generalized statement without explanation that a uniform standard applies "can reasonably be deemed conclusory" and deficient. *Gray v. CHCA Bayshore, L.P.*, 189 S.W.3d 855, 859–60 (Tex.App.-Houston [1st Dist.] 2006, no pet.)(report failed to notice "who had what responsibility and how that person or persons depart-

ed from the standard ... in failing to do some specific act required by a person in that position").

### Dr. Motta

Motta's only objection to cardiologist Cohen's report is that it does not show he is qualified to testify on Motta's conduct as a pulmonologist. A report may be challenged for failing to sufficiently detail why the expert is qualified. *See Hansen v. Starr,* 123 S.W.3d 13, 20 (Tex.App.-Dallas 2003, pet. denied). The qualifications must appear within the report's "four corners" or *curriculum vitae. See Hansen,* 123 S.W.3d at 19–20 (citing *Palacios,* 46 S.W.3d at 878).

Cohen states he is a licensed, practicing physician, board certified in internal medicine, cardiovascular diseases, and interventional cardiology. He states he has "knowledge of the accepted standards of medical care for the diagnosis, care and treatment of pacemaker insertion and pericardial tamponade" and is qualified based on his "training, education, and experience regarding" those standards. His *curriculum vitae* recites extensive cardiological expertise, which Motta does not challenge. But his report describes no pulmonology-related expertise and the Kettles point to nothing in his *curriculum vitae* reflecting any pulmonology-related expertise. The Kettles counter that the report is sufficient because it adequately shows qualification to opine on the standard governing diagnosis/treatment of the "condition involved in the[ir] claim," Kettle's cardiac condition. *See* MLIIA § 14.01(a)(2).

MLIIA section 14.01(a)(1)-(3) provides that in suits against physicians an expert may qualify to opine on breach of the applicable standard of care if the expert

(1) "practic[es] medicine";

(2) has knowledge of accepted "medical care" standards "for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim"; and

(3) is qualified based on "training or experience" to opine on those standards.

When a "subject is substantially developed in more than one field, testimony can come from a qualified expert in *any* of those fields," provided the offering party can establish expertise "regarding the specific issue before the court...." *Broders v. Heise,* 924 S.W.2d 148, 153–54 (Tex.1996) (emphasis added). Thus, under MLIIA § 14.01(a)(2), courts hold that a physician-expert outside a physician-defendant's practice specialty is not categorically disqualified, provided the expert has sufficient training, practical experience, or knowledge of the standard of medical care "for *the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim ....*" *See Blan v. Ali,* 7 S.W.3d 741, 745–47 (Tex.App.Houston [14th Dist.] 1999, no pet.) (emphasis original).

We above held Cohen's report deficient in lumping all the physician-defendants together without specifying what responsibility each undertook, what role each played in Kettle's care, and what standard of care applied to each. For the same reason it is deficient in demonstrating Cohen's qualification to opine on Motta's conduct. *See Olveda v. Sepulveda,* 141 S.W.3d 679, 682–83 (Tex.App.-San Antonio 2004), *pet. denied,* 189 S.W.3d 740 (Tex.2006).

Cohen may very well be qualified to opine on the services Motta performed. Motta may very well have undertaken to diagnose and treat Kettle's specific cardiac condition within Cohen's competence to opine. Or Motta may simply have been called in as a specialist to monitor or treat Kettle's COPD. But we cannot tell from

the report what role Motta played in Kettle's care. We thus cannot conclude the trial court abused its discretion in finding Cohen's report inadequate as to Motta. *See Hansen v. Starr,* 123 S.W.3d 13, 16, 19–20 (Tex.App.Dallas 2003, pet. denied).

### Baylor Hospital

■ For Baylor's liability from conduct of its nurses, the Kettles rely on Nurse Pugh's report in conjunction with Dr. Cohen's.[4] Baylor only challenges the sufficiency of the causation element, conceding sufficiency of the nursing standard and breach elements.

*Nurse Pugh's report.* Pugh first opines that negligent patient monitoring and assessment and delay in reporting to physicians caused delayed treatment. She then medically opines on cause of death. The substance of her report may be summarized:

- **Negligent monitoring, assessment, and reporting delayed treatment.** Baylor nurses breached a duty to recognize symptoms of uncontrolled blood loss and to consider complications of Kettle's pacemaker implant; breached a duty to report possible pacemaker complications and to "timely" report his unimproved vital signs, persistent symptoms, and deteriorating condition to physicians; failed to follow through to obtain results of an echocardiogram, which would have yielded "valuable insight" into the cause of Kettle's condition; and despite monitoring decreasing blood pressure, waited five hours to call a doctor, two hours before he arrested,[5] "caus[ing] delay in treatment. . . ."

- **Medical causation.** Delayed treatment "directly affected" Kettle's "negative outcome" and "contributed" to his death and "earlier" physician treatment "could" have prevented it.

■ We first note that as a registered nurse and not a physician licensed to practice medicine, Pugh is not qualified to testify on medical causation. Because she may not render medical diagnoses[6] she is not qualified to opine that any particular treatment at any particular time would have prevented Kettle's death. *See Costello v. Christus Santa Rosa Health Corp.,* 141 S.W.3d 245, 248, n. 3 (Tex.App.-San Antonio 2004, no pet.). However, we may consider Pugh's report in conjunction with Cohen's medical causation opinion. *See* MLIIA § 13.01(i) (authorizing separate expert reports addressing liability and causation); *see, e.g., Hillcrest Baptist Med. Ctr. v. Wade,* 172 S.W.3d 55, 57–58, 60–61 (Tex.App.-Waco 2005, pet. granted, cause dism'd by agr.) (nurse report opining that nursing standard breached by delays in recognizing symptoms, assessing condition, and calling physicians, considered with

---

4. Nurse Pugh states she is a licensed, practicing registered nurse (RN), is board certified in operating room nursing (CNOR), has been certified in Advanced Cardiac Life Support (ACLS), has "extensive experience working as a nurse in the surgical, medical and cardiac intensive care units," has "knowledge of the accepted standards of nursing care" of patients with COPD, cardiac arrhythmias, and pacemaker implants, and is qualified based on her "training, education and experience regarding" those standards.

5. Dr. Cohen's report states the time of Kettle's arrest.

6. Medical diagnosis and treatment is practicing medicine, Tex. Occ.Code § 151.002(a)(13), which requires a medical license. *Id.* §§ 151.002(a)(12), 155.001. The Nursing Practice Act defines "nursing" as "professional or vocational nursing" and states it "does not include acts of medical diagnosis. . . ." Tex. Occ.Code Ann. § 301.002(2), (4)-(5) (Vernon Supp.2006).

physician reports opining that delays in medical treatment caused injuries).

Pugh opines that delayed reporting to physicians of Kettle's condition in turn delayed treatment by them. Cohen's report explicitly opines that Kettle's COPD was not otherwise terminal and that earlier treatment "would have ... saved his life." Baylor argues Cohen's report is insufficient because it does not opine that a five hour reporting delay "prevented" earlier pericardiocentesis. Baylor also argues the report does not state the physicians would in fact have performed pericardiocentesis timely, or at all, but for the delay in conveying the specific information withheld. We do not find these arguments persuasive. Cohen specifically opined that Kettle's death was not imminent but preventable by earlier pericardiocentesis. "[A] delay is a delay." *Hillcrest*, 172 S.W.3d at 60. If not informed of his symptoms they obviously would not be in a position to intervene at all.

■ Reports need not marshal all the plaintiff's proof or meet the formal evidentiary requirements of a trial or summary judgment proceeding; they need only notice the conduct called into question and give the trial court a basis to determine whether a claim has merit. *Palacios*, 46 S.W.3d at 878–79. We conclude Pugh and Cohen's reports collectively state causation sufficiently to meet *Palacios* and satisfy MLIIA on the conduct of the Baylor nurses.

### Cardiology Consultants

■ The Kettles argue the MLIIA expert report requirement does not apply to Cardiology at all because they allege no direct negligence against it and seek only to hold it vicariously liable for Agrawal's conduct as agent or employee in the course and scope of employment.[7]

The parties agree that Cardiology is a physicians' professional association. The supreme court has expressly held MLIIA's protections apply to these entities. *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 39 (Tex.1998) (per curiam) (citing legislative intent). MLIIA expressly requires the Kettles to submit an expert report "for each physician *or health care provider* against whom a claim is asserted...." MLIIA § 13.01(d)(1) (emphasis added). Thus, arguing no expert report is required is without merit.

The Kettles next rely on Cardiology's position in its motion to dismiss in the trial court that the Texas Medical Practice Act[8] does not provide a vehicle for a professional association to become licensed to "practice medicine." We do not find this relevant. First, as stated MLIIA specifically requires an expert report for each "health care provider" sued, which encompasses physician professional associations. Second, the Texas Professional Association Act makes physician professional associations "jointly and severally liable with the officer or employee furnishing professional services" in the "course of his employment for the association" for professional negligence. *See* TEX.REV.CIV. STAT. ANN. art. 1528f, § 24 (Vernon Supp.2006). This creates "direct liability" of the professional association for the actions of a physician-principal in the course of employment because the former acts through the latter and the latter's conduct is imputed to it. *Battaglia v. Alexander*, 177 S.W.3d 893, 902 (Tex.2005).

Whether Cardiology's liability is considered direct or vicarious, that liability still depends on conduct of Agrawal, to which

---

7. Cardiology has not challenged the course and scope of employment allegation.

8. TEX. OCC.CODE ANN. chs. 151–165 (Vernon 2004 & Supp.2006).

MLIIA indisputably applies. *See Whitworth v. Presbyterian Healthcare Ctr.*, 2001 WL 1264238, \*5 (Tex.App.-Dallas 2001, no pet.) (unreported decision) ("While an expert is not required to opine on the vicarious liability issue, an expert is required to identify how Presbyterian [hospital] failed to meet a standard of care relating to it or its employees or agents."). We conclude the trial court did not abuse its discretion in dismissing the Kettles' suit against Cardiology for the deficiencies in Cohen's report on Agrawal.[9]

### Extension of Time to Cure Deficiencies

■ In the alternative to arguing Cohen's report on the physicians and Cardiology was sufficient, the Kettles assert that if the report is insufficient the trial court abused its discretion by failing to grant a 30–day grace period under MLIIA section 13.01(g) to amend or supplement it to cure any deficiencies. That section mandates an extension where failure to comply with MLIIA's expert report requirements was not intentional or consciously indifferent but accidental or mistaken. The sole basis for the Kettles' argued right to an extension is a good faith, if mistaken, belief by their counsel that the report was sufficient to satisfy MLIIA. The Kettles thus argue mistake of law.

■ The supreme court has rejected the Kettles' position. It holds that some but not all mistakes of law are sufficient to negate intentional conduct or conscious indifference to excuse statutory non-compliance, entitling a claimant to a section 13.01(g) grace period. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63–64 (Tex. 2003). We review claimants' acts and

knowledge and charge them with knowledge of MLIIA and its requirements. *Walker*, 111 S.W.3d at 64. *Walker* specifically holds that counsel's mistaken belief that a report satisfied MLIIA, though it omits one of the statutorily required elements, is not a mistake of law sufficient to negate intentional or conscious indifference. *Walker*, 111 S.W.3d at 59, 64–65.

■ The burden of showing entitlement to a section 13.01(g) grace period is on the health care liability claimant. *Yaquinto v. Britt*, 188 S.W.3d 819, 827 (Tex. App.-Fort Worth 2006, pet. denied). The Kettles argue that their counsel's testimony on mistaken belief was uncontroverted so extension was mandated. But *Walker* holds that even if testimony is uncontroverted, the claimant does not satisfy its burden unless the testimony sets forth facts that, if true, negate intentional or conscious indifference; and that testimony of a mistaken belief that the report complies does not meet this burden if the report omits a required element. *See Walker*, 111 S.W.3d at 64–65.

The Kettles argue *Walker* is inapposite because the reports if conclusory or otherwise deficient nonetheless did not "omit" any of the required elements of duty, breach, causation, or expert qualification. They cite *In re Zimmerman*, 148 S.W.3d 214, 217 (Tex.App.-Texarkana 2004, orig. proceeding), *mand. filed* (No. 05–0826, Tex. October 4, 2005). But other courts hold that the substance of a report controls and that merely mentioning an element "without setting out or describing" what the element encompasses, such as specifying what acts a standard of care requires, is equivalent to omitting it, such

---

9. Cardiology also argues it is entitled to a dismissal of any vicarious-liability claims for conduct of agents or employees other than Agrawal. We need not address this contention because we need only address dismissal of "health care liability claims," which require an expert report, and the Kettles submitted no report on conduct of any such other agent or employee.

that *Walker* may be applied. *In re Brown*, 190 S.W.3d 4, 7 (Tex.App.-Amarillo 2005, orig. proceeding), *mand. denied* (May 13, 2005); *accord, Gereb v. Sedillo*, 2006 WL 397909, *2 (Tex.App.-San Antonio 2006, no pet.) (mem.op.); *Pisasale v. The Ensign Group, Inc.*, 2006 WL 2567400, *5 (Tex. App.-Eastland 2006, pet. denied) (mem op.).

 We note *Walker* found no distinction between filing an inadequate report and filing no report in assessing compliance with MLIIA's filing deadline. 111 S.W.3d at 61. We also note the longstanding general rule that conclusory opinion testimony is not evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004) (reviewing cases). We further note we have applied *Walker* to reject mistaken-belief arguments for an extension to cure conclusory or insufficiently specific reports. *See, e.g., Hansen v. Starr*, 123 S.W.3d 13, 20–21 (Tex.App.-Dallas 2003, pet. denied).

*Zimmerman* contains no analysis and only held that the trial court was "not required, as a matter of law, to find that no accident or mistake occurred" and thus did not abuse its discretion in that case to allow an extension to amend and correct deficiencies. 148 S.W.3d at 217. Based on the record before us and the substance of Cohen's report, we cannot conclude it was an abuse of discretion for the trial court to find the report, containing analytical gaps on key elements, bare conclusions, and insufficient specificity to satisfy the *Palacios* standard, equivalent to omitting statutorily required elements such that *Walker* applies. We thus cannot find abuse of discretion in denying an extension to amend.[10]

10. In light of our disposition on the merits, we do not reach Baylor's procedural arguments that the Kettles' waived their motion for extension because it was heard after the court granted Baylor's motion to dismiss.

## CONCLUSION

In light of the foregoing, we conclude the trial court did not abuse its discretion in sustaining objections by Ezeldin, Agrawal, Motta, and Cardiology to Cohen's report and dismissing the Kettles' suit against them and in failing to grant them an extension to cure the report's deficiencies. We also conclude the trial court abused its discretion in sustaining Baylor's objection to Cohen and Pugh's report and dismissing the Kettles suit against it. We thus reverse the trial court's order dismissing the Kettles' suit against Baylor and remand for further proceedings. We affirm the orders dismissing the Kettles' suit against Ezeldin, Agrawal, Motta, and Cardiology and denying the Kettles' requested extension of time to amend Cohen's report on these defendants.