NO. 07-08-0020-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C 

APRIL 8, 2009

______________________________


PEACHTREE CONSTRUCTION, LTD. AND PEACHTREE 
CONSTRUCTION, INC., APPELLANTS

V.

MARION NEAL HEAD, APPELLEE

_________________________________

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY;

NO. 017-214779-05; HONORABLE FRED W. DAVIS, JUDGE
_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


ON JOINT MOTION TO DISMISS


          By opinion and judgment dated March 10, 2009, this Court affirmed the trial court’s
judgment awarding Appellee, Marion Neal Head damages of $191,970 with prejudgment
interest in his personal injury action against Appellants, Peachtree Construction, Ltd. and
Peachtree Construction, Inc. A motion for rehearing was due on March 25, 2009, but was
not filed. Instead, on March 30, 2009, the parties filed a Joint Motion to Dismiss indicating
they have agreed to compromise and settle the entire dispute between them. 
          While our plenary power continues, we now withdraw our opinion and judgment of
March 10, 2009, and in lieu thereof, grant the joint motion to dismiss the appeal. Tex. R.
App. P. 42.1(a). Having dismissed the appeal at the request of all parties and the deadline
for filing a motion for rehearing having expired, our mandate will issue forthwith. No
agreement as to costs having been set forth in the motion, costs are taxed against 
Peachtree Construction, Ltd. and Peachtree Construction, Inc. per Rule 42.1(d) of the
Texas Rules of Appellate Procedure. 
 
                                                                           Patrick A. Pirtle

                                                                                 Justice




0;
\
                                            (23) “Physician” means:
\
                                            (A) an individual licensed to practice medicine in this \
 state;
\
\
§ 74.001(a) (emphasis added).
\
'

var WPFootnote13 = '
The term “experts” as it applies to expert reports required by § 74.351(a), is\
defined, in pertinent part, as follows:
\
\
                                           (r) In this section,
\
\
                                           (5) “Expert” means:
\
\
                                           (A) with respect to a person giving opinion testimony regarding\
whether a physician departed from accepted standards of\
medical care, an expert qualified to testify under the\
requirements of Section 74.401;
\
\
                                           (B) with respect to a person giving opinion testimony regarding\
whether a health care provider departed from accepted\
standards of health care, an expert qualified to testify under\
the requirements of Section 74.402;
\
\
                                           (C) with respect to a person giving opinion testimony about the\
causal relationship between the injury, harm, or damages\
claimed and the alleged departure from the applicable\
standard of care in any health care liability claim, a physician\
who is otherwise qualified to render opinions on such causal\
relationship under the Texas Rules of Evidence; \
\
(emphasis added). \
'

var WPFootnote14 = '
It is also worth noting that § 74.351 does not purport to define the term “physician,”\
but “expert.” Section 74.351(r) is also prefaced by language, “[i]n this section,” limiting the\
applicability of its defined terms to § 74.351 only. Due to this limiting language, use of the\
definition of a causation expert contained in §§ 74.403 and 74.401(g) does not conflict with\
the overall applicability of the definition of “physician” in § 74.001(a)(23) as a general\
definition applicable to Chapter 74. In addition, this interpretation keeps all references to\
“physician” as an expert witness in a health care liability claim or suit consistent throughout\
Chapter 74. \
'

var WPFootnote15 = '
Although Dr. Shadoff’s expert report refers to Cardiology Associates of Lubbock,\
the named defendant was Cardiologists of Lubbock, P.A. Because the Defendants\
Roberto E. Solis, M.D. and Cardiologists of Lubbock, P.A.’s Objection to Plaintiff’s Expert\
Report and Motion to Dismiss did not object to this misnomer as a basis for the\
insufficiency of Dr. Shadoff’s report, for purposes of this opinion, we will treat the report as\
if it had properly designated Cardiologists of Lubbock, P.A. See Tex. R. Civ. P. 71.
\
'

var WPFootnote16 = '
Shadoff’s statement that, while Johnson’s injury was caused by a stroke due to an\
embolus arising from the mechanical valve, he “cannot exclude a concomitant paroxysm\
of atrial fibrillation, as well,” does not render his report conclusory under Bowie as Solis\
suggests. The Bowie Court held the expert report was deficient on causation where the\
report simply opined that the patient might have had “the possibility of a better outcome”\
if an x-ray had been read properly without explaining how Bowie’s conduct caused injury\
to the patient. 79 S.W.3d at 53. Just because Shadoff also describes the possibility there\
was a subordinate or incidental cause for her harm does not render his expert report\
conclusory. This is particularly so where Shadoff also states that the prophylactic\
treatment with anticoagulation is the same for either condition. \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0424-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 4, 2008

______________________________


WILLIAM EUGENE SPRINGER, M.D., LUBBOCK HEART HOSPITAL,
CARDIOLOGISTS OF LUBBOCK, P.A., JOSEPH A. RIZZO, M.D.
 AND ROBERTO E. SOLIS, M.D., APPELLANTS

V.

JOYCE JOHNSON, APPELLEE

________________________________

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-537,597; HONORABLE BILL SOWDER, JUDGE,

_______________________________

Before QUINN, C.J., and PIRTLE, J., and BOYD, S.J.




OPINION


          This appeal involves the statutory construction of the term “physician” as used in
Chapter 74 of the Texas Civil Practice and Remedies Code, specifically § 74.351(r)(5)(C),
as it pertains to the qualifications of an “expert” for purposes of an expert report on the
issue of the causal relationship between the injury, harm, or damages claimed and the
alleged departure from the applicable standard of care in a health care liability claim. 
Appellants, William Eugene Springer, M.D., Lubbock Heart Hospital, Cardiologists of
Lubbock, P.A., Joseph A. Rizzo, M.D., and Roberto E. Solis, M.D. (hereinafter collectively
referred to as the Medical Group), contend the term “physician” means an individual
licensed to practice medicine in this state, as defined by § 74.001(a)(23)


 (emphasis
added). Medical Group appeals from an order denying their objections to the sufficiency
of the expert report served by Appellee, Joyce Johnson, in support of her medical
malpractice suit. Medical Group contends the trial court erred in denying their objections
because: (1) Johnson’s expert report failed to demonstrate that its author was qualified to
provide an opinion on the issue of causation because he is not licensed to practice
medicine in Texas and (2) the report addressed the applicable standard of care, purported
breaches, and causation in a conclusory manner. We affirm.
Background
          In October 2004, Johnson was admitted to the Lubbock Heart Hospital where she 
 underwent cardiac surgery to replace a defective heart valve with a mechanical one. Prior
to surgery her attending physicians discontinued her anticoagulant therapy. During her
hospital stay, Johnson alleges her physicians and health care provider neither restarted
her therapy nor properly monitored her condition. Three days later, after her surgery was
completed, she was discharged and allegedly received no prescription or instructions to
resume her anticoagulant therapy. At her post-discharge appointment at Dr. Springer’s
office, her staples were removed; however, she did not see a doctor, and her therapy was
not resumed. On November 16, 2004, Johnson suffered a stroke.
          Johnson filed a medical malpractice action against Medical Group alleging they
failed to properly monitor her condition, coordinate her care, and/or resume her
anticoagulant therapy thereby causing her stroke. Medical Group responded with general
denials and Johnson timely served her expert report in accordance with § 74.351(a). 
Thereafter, Medical Group filed objections to the sufficiency of her expert report and moved
for dismissal pursuant to § 74.351(b). The trial court denied their objections whereupon
they filed this interlocutory appeal.
 Discussion 
          Medical Group contends that an “expert” for purposes of an expert report on the
issue of the causal relationship between the injury, harm, or damages claimed and the
alleged departure from the applicable standard of care in a health care liability claim is a
“physician” as defined by § 74.001(a)(23), which by definition would only include an
individual licensed to practice medicine in this state. Medical Group asserts Dr. Neal
Shadoff, the author of Johnson’s expert report, is unqualified to issue an opinion on
causation because he is not licensed to practice medicine in Texas. Shadoff is licensed
to practice medicine in New Mexico, Colorado, and North Carolina. Certain members of
Medical Group


 next assert Johnson’s report is deficient because the report explains their
standard of care, purported breaches, and causation in a conclusory fashion by ascribing
an identical standard of care to three physicians (Rizzo, Solis, and Springer), treating them
collectively in describing the breach and failing to address causation.
          I.        Interlocutory Appeal
          Appellate courts have jurisdiction to consider immediate appeals of interlocutory
orders only if a statute explicitly provides appellate jurisdiction. Stary v. DeBord, 967
S.W.2d 352, 352-53 (Tex. 1998); In re Estate of Hersey, 223 S.W.3d 457, 459
(Tex.App.–Amarillo 2006, no pet.). Section 51.014(a)(9) of the Civil Practice and
Remedies Code authorizes an appeal from an interlocutory order issued by a district court
denying a motion asserting that a timely filed expert report is deficient under § 74.351(b). 
Accordingly, we have jurisdiction to consider this appeal. See Lewis v. Funderburk, 51
Tex. Sup. Ct. J. 747, 2008 WL 1147188, *2 (Tex. Apr. 11, 2008); Wells v. Ashmore, 202
S.W.3d 465, 467 (Tex.App.–Amarillo 2006, no pet.).
 

II.       Statutory Construction
          Statutory construction is a question of law for the court, City of Lubbock v. Adams,
149 S.W.3d 820, 826-27 (Tex.App.–Amarillo 2004, pet. denied), which we review de novo. 
Texas Dep’t of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002); Oak Park, Inc. v.
Harrison, 206 S.W.3d 133, 137 (Tex.App.–Eastland 2006, no pet.). Our primary objective
when construing a statute is to ascertain and give effect to the Legislature’s intent. Texas
Dept. of Protective and Regulatory Services v. Mega Child Care, 145 S.W.3d 170, 176
(Tex. 2004); Texas Dept. of Public Safety v. Coers, 153 S.W.3d 632, 633
(Tex.App.–Amarillo 2004, no pet.).
          To discern the Legislature’s intent, we begin with the plain and common meaning
of the statute’s words. Texas Dept. of Transp. v. City of Sunset Valley, 146 S.W.3d 637,
642 (Tex. 2004). If a statute uses a term with a particular meaning or assigns a particular
meaning to a term, we are bound by the statutory usage. Needham, 82 S.W.3d at 318. 
If the statutory language is unambiguous, we must adopt the interpretation supported by
its plain language unless such an interpretation would lead to absurd results. Mega Child
Care, 145 S.W.3d at 177. We must also consider the statute as a whole rather than its
isolated provisions, City of Sunset Valley, 146 S.W.3d at 643; City of Canyon v. Fehr, 121
S.W.3d 899, 905 (Tex.App.–Amarillo 2003, no pet.), and “not give one provision a meaning
out of harmony or inconsistent with other provisions, although it might be susceptible to
such a construction standing alone.” Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 493
(Tex. 2001). 
          Although a statute is not ambiguous on its face, we may also “consider other
matters in ascertaining the Legislature’s intent, including the objective of the law, the
legislative history, and the consequences of a particular construction.” McIntyre v.
Ramirez, 109 S.W.3d 741, 745 (Tex. 2003) (citing Tex. Gov’t Code Ann. § 311.023(1), (3),
(5)). Furthermore, we must presume the Legislature intends an entire statute to be
effective and that a just and reasonable result is intended. Tex. Gov’t Code Ann. §
311.021(2), (3) (Vernon 2005).
          Subchapter I of Chapter 74 of the amended Medical Liability and Insurance
Improvement Act of Texas


 entitled “Expert Witnesses” establishes expert witness
qualifications for suits involving health care liability claims.


 Specifically, Subchapter I
establishes qualifications for expert witnesses testifying in suits against physicians (§
74.401) and health care providers (§ 74.402), as well as for expert witnesses on causation
(§ 74.403).   The qualifications for an expert witness on causation are, in pertinent part,
as follows:
Except as provided by Subsections (b) and (c), in a suit
involving a health care liability claim against a physician or
health care provider, a person may qualify as an expert
witness on the issue of the causal relationship between the
alleged departure from accepted standards of care and the
injury, harm, or damages claimed only if the person is a
physician and is otherwise qualified to render opinions on that
causal relationship under the Texas Rules of Evidence. 
 
§ 74.403(a) (emphasis added).
 
          The expert opinion of a physician, Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779,
782 (1949), qualified to testify under Texas Rule of Evidence 702;


 Broders v. Heise, 924
S.W.2d 148, 151-52 (Tex. 1996), has long been required in suits involving health care
liability claims. 
          Subchapter I of the Act defines a “physician” as follows: 
In this subchapter, “physician” means a person who is:
 
(1) licensed to practice medicine in one or more states in the
United States; or
(2) a graduate of a medical school accredited by the Liaison
Committee on Medical Education or the American Osteopathic
Association only if testifying as a defendant and that testimony
relates to that defendant’s standard of care, the alleged
departure from that standard of care, or the causal relationship
between the alleged departure from that standard of care and
the injury, harm, or damages claimed.
 
§ 74.401(g).
 
          Thus, if we apply the plain language of § 74.403(a) coupled with the applicable
definition of the term “physician” in § 74.401(g), an expert witness testifying on causation
in a suit involving a health care liability claim against a physician and/or a health care
provider is qualified as an expert witness if he is a physician licensed to practice in one or
more states in the United States and is otherwise qualified under the Texas Rules of
Evidence. This interpretation comports with the applicable legislative history and case
law.



          When the Act was initially passed to require the filing of early expert reports rather
than affidavits, the Act amended prior provisions related to expert witness qualifications in
Article 4590i, § 14.01,


 but failed to define the term “physician.” Although the bill, as
introduced, initially required a physician expert to hold “a license to practice in this state at
the time the claim arose,”


 the bill enacted into law did not contain such a restriction. See
Tex. H.B. 971, 74th Leg., R.S., 1995 Tex. Gen. Laws 985-88. 
          Despite elimination of a Texas licensure requirement for physician-experts from the
bill, the Legislature’s failure to specifically define “physician” for the purpose of expert
witness qualification led to the advancement of a legal argument that all expert testimony
must be provided by a physician licensed to practice medicine in Texas through the
application of the general definition of “physician” contained then in Article 4590i, §
1.03(a)(8), currently § 74.001(a)(23). See Paula Sweeney, Medical Malpractice Expert
Testimony, 41 S. Tex. L. Rev. 517, 520 (2000). See also David F. Johnson, Exploring The
Expert Report of 4590i, 54 Baylor L. Rev. 359, 366 (2002). 
          The Legislature found the Texas state licensure requirement overly restrictive, and
the Act was amended again in 1999 to broaden the requirement for physician experts to
include licensure in other states as follows:
In 1999, the legislature again amended section 14.01 to add subsection (g),
which states: “In this section, “physician” means a person who is: (1)
licensed to practice medicine in the United States . . . .” Act of May 13,
1999, 76th Leg., R.S., ch. 242, § 1, 1999 Tex. Gen. Laws 1104-05 (codified
at Tex. Rev. Civ. Stat. Ann. art. 4590i, § 14.01(g) (Vernon Supp. 2000). The
bill analysis states that the reason for this definition was to effectuate the
intent of the 1995 legislature to allow physicians licensed in other states
other than Texas to qualify as expert witnesses. See House Comm. on Civil
Practices, Bill Analysis, Tex. H.B. 504, 67th Leg., R.S. (1999). 
 
Lee v. Mitchell, 23 S.W.3d 209, 214 (Tex.App.–Dallas 2000, pet. denied).
 
          After a detailed analysis, the Lee court concluded that the Legislature’s deletion of
the Texas licensure requirement from the original version of the 1995 bill evidenced a clear
legislative intent not to impose the requirement and recognized the subsequent
amendment in 1999 to include physicians licensed to practice medicine in the United
States as “highly persuasive evidence that the Legislature did not intend to impose the
requirement.” Id. at 215 (citing Texas Water Comm’n v. Brushy Creek Mun. Util. Dist., 917
S.W.2d 19, 21 (Tex. 1996)). Thus, the Lee court held that “a physician making an expert
report under section 13.01(d) of the Act is not required to be a physician licensed in
Texas.” Id. at 215.



          We find that the subsequent repeal of § 14.01(g) and its recodification in 2003 as
§ 74.401(g)


 further evidence of a clear legislative intent that physician-experts in medical
malpractice cases may be licensed in states other than Texas. While leaving the language
of the general definition of “physician” in § 1.03(a)(8) unaltered after its recodification as
§ 74.001(a)(23), the Legislature further clarified the definition of “physician” in § 14.01(g)
(“person who is licensed to practice medicine in the United States”), in its recodification as
§ 74.401(g) (“person who is licensed to practice medicine in one or more states in the
United States [emphasis added]”) to more clearly express its intent that physician-experts
in medical malpractice actions be qualified if licensed in states other than Texas. 
          However, Medical Group asserts the definition of “physician” in § 74.001(a)(23)



must necessarily be applied to qualify a physician as a causation expert for the purpose
of expert reports served pursuant to § 74.351(a) in Subchapter H, Procedural Provisions. 
Because § 74.001(a)(23) applies throughout Chapter 74, Medical Group asserts its 
definition of “physician” applies in Subchapter H rather than the definition in § 74.401(g)
of Subchapter I, Expert Witnesses. They contend the prefatory language contained in §
74.401(g), “[i]n this section,” limits its application exclusively to Subchapter I. Medical
Group also asserts their interpretation is bolstered because the qualifications for an
“expert” regarding the standard of medical care for claims against a physician or a health
care provider in § 74.351(r)(5) are qualified by citation to provisions in Subchapter I while
the qualifications for an “expert” on causation are not so qualified.


 Medical Group
contends that omission of a citation to § 74.403 following the definition of a causation
expert in § 74.351(r)(5)(C) evidences the Legislature’s intent that the general definition of
“physician” in 74.001(a)(23) control licensure requirements for causation experts submitting
expert reports pursuant to § 74.351(a) rather than the definition of “physician” in §
74.401(g) applicable through § 74.403. 
          Medical Group’s interpretation ignores the Act’s clear legislative history on this point
as well as sidesteps well-established rules of statutory construction. “A fundamental and
universally accepted rule of construction is that a general provision must yield to a
succeeding specific provision dealing with the same subject matter.” Forwood v. City of
Taylor, 147 Tex. 161, 214 S.W.2d 282, 285-86 (1948). Moreover, when the law makes a
general provision, apparently for all classes, and a special provision for a particular class,
the general must yield to the special insofar as the particular class is concerned. City of
Dallas v. Mitchell, 870 S.W.2d 21, 23 (Tex. 1994) (citing Sam Bassett Lumber Co. v. City
of Houston, 145 Tex. 492, 198 S.W.2d 879, 881 (1947)).
          In accordance with these well-established rules, the general definition of a
“physician” applicable to Chapter 74 as a whole must yield in § 74.351(r)(5)(C) to the
special definition of “physician” in § 74.401(g) specifically drafted to apply to expert
witnesses for applicable standard(s) of care and causation. A specific statute such as the
physician-expert definition in § 74.401(g) more clearly evinces the intention of the
Legislature on expert witness qualification than the general definition of “physician” in §
74.001(a)(23). See 67 Tex. Jur. 3d Statutes § 123 (2003). This is particularly so where
the Legislature has chosen to use the identical language or phrasing to describe expert
witness qualification for causation issues as a physician who is “otherwise qualified to
render opinions” on causal relationships under the Texas Rules of Evidence in both
statutes, § 74.351(r)(5)(C) and § 74.403(a). “When construing a statutory word or phrase,
a court may take into consideration the meaning of the same or similar language used
elsewhere in the act.” Guthery v. Taylor, 112 S.W.3d 715, 721 (Tex.App.–Houston [14th
Dist.] 2003, no pet.); 67 Tex. Jur. 3d Statutes § 105.
          That “expert” qualifications for drafting a report regarding the standard of medical
care for claims against a physician or a health care provider are followed by citations to
Subchapter I while qualifications for an “expert” on causation are not, is of no moment. 
Citing the applicable statutory provisions in Subchapter I related to expert opinion
testimony regarding whether a physician or health care provider departed from accepted
standards of medical care in § 74.351(r)(5)(A) and (B) respectively, is necessary in order
to incorporate their many statutory requirements for qualifying such witnesses under the
applicable statutes, §§ 74.401 and 74.402 respectively. However, the phrase “physician
who is otherwise qualified to render opinions on such causal relationship under the Texas
Rules of Evidence” in § 74.351(r)(5)(C) is all that is necessary to incorporate the entirety
of the requirements for qualification of an expert witness on causation in § 74.403,
including the definition of “physician” in § 74.401(g). That the identical language of §
74.403 follows as a matter of course in § 74.351(r)(5)(C) after similar provisions of
Subchapter I are cited in (A) and (B) of the same statute is a further indication the
Legislature intended the qualification of an expert witness on causation under §
74.351(r)(5)(C) to be governed by § 74.403.


 
          This is particularly so when the limiting language in § 74.403(a), “[e]xcept as
provided by Subsections (b) and (c)” is considered. Thus, except in instances where
health care liability claims are asserted against dentists, § 74.403(b), and podiatrists,
§74.403(c), a person may only qualify as an expert witness on the issue of causation in a
suit involving a health care liability claim if the person is a physician licensed to practice
medicine in one or more states in the United States and is otherwise qualified to render
opinions on that causal relationship under the Texas Rules of Evidence. §§ 74.403(a),
74.401(g). Clearly, the statute’s plain language indicates that § 74.403(a) applies in any
suit involving a health care liability claim other than those specifically excluded by the
prefatory proviso. The mere omission of a citation to § 74.403(a) at the end of §
74.351(r)(5)(C) cannot contravene the statute’s plain language and clear legislative intent
as Medical Group suggests. 
          Accordingly, this issue is overruled.
           III.      Sufficiency of Johnson’s Expert Report
          Under § 74.351(r)(6), an expert report is defined as “a fair summary of the expert’s
opinions as of the date of the report regarding the applicable standards of care, manner
in which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between the failure and the injury, harm, or
damages claimed.” In its entirety, the report must represent an objective good faith effort
to comply with this definition. Id. at § 74.351(l).
          To constitute a “good faith effort,” the report must provide enough information to
fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has
called into question, and (2) it must provide a basis for the trial court to conclude that the
claims have merit. American Transitional Care Ctrs. of Texas, Inc. v. Palacios, 46 S.W.3d
873, 879 (Tex. 2001). When assessing the report’s adequacy, the trial court should look
no further than the report itself, because all the information relevant to the inquiry is
contained within the document’s four corners. Palacios, 46 S.W.3d at 878. 
          Although the report must contain an expert opinion on each of the elements
identified in the statute–standard of care, breach and causation–the “plaintiff need not
present evidence in the report as if it were actually litigating the merits.” Id. at 878-79. 
Although its adequacy “does not depend on whether the expert uses any particular
‘magical words,’” Bowie Memorial Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002), the
expert must provide enough data to inform the defendant of the specific conduct called into
question and provide the trial court means to preliminarily assess whether the claim has
a factual basis. Wells v. Ashmore, 202 S.W.3d 465, 467 (Tex.App.–Amarillo 2006, no
pet.); Chisholm v. Maron, 63 S.W.3d 903, 906 (Tex.App.--Amarillo 2001, no pet.). 
          The issue then for this Court is whether the trial court abused its discretion by
finding Johnson’s expert report represented an objective good-faith effort to comply with
the statutory definition of an “expert report.” Bowie, 79 S.W.3d at 52. A trial court abuses
its discretion if it acts in an arbitrary manner without reference to any guiding rules or
principles. Id. 
          Shadoff’s expert report indicates Johnson suffered from paroxysmal atrial fibrillation,
an abnormal heart rhythm alternating between a normal heart rhythm, and she underwent
a combined coronary bypass graft and aortic valve replacement while at Lubbock Heart
Hospital. He opines that these two facts are clinical indicators establishing a compelling
and absolute need for anticoagulation therapy using warfarin because (1) an aortic valve
replacement significantly increased her risk of thromboembolism, i.e. clot formation in a
blood vessel that breaks loose and is carried by the blood stream until it eventually plugs
another blood vessel, and (2) her paroxysmal atrial fibrillation added to that risk. Shadoff
further opines that Johnson should have been prescribed warfarin and aspirin. He states
that Springer, Johnson’s cardiac surgeon, and Rizzo and Solis, her attending cardiologists,
were under a duty to coordinate an appropriate plan for their patient’s care which would
have included coordinating care between themselves as well as employees and agents of
Lubbock Heart Hospital. He further opines they were also under a duty to supervise
anticoagulation management of Johnson utilizing a combination of warfarin and aspirin. 
           Shadoff opines this duty was breached when Johnson was released from the
hospital without any anticoagulation therapy, i.e. a prescription for warfarin or aspirin. In
his opinion, Johnson should have been scheduled for a subsequent blood test to monitor
her anticoagulation. In addition, the medical records available to Shadoff did not contain
any notes documenting a plan for outpatient anticoagulation. Shadoff cites to publications
of the American College of Cardiology/American Heart Association that indicate: (1) the
risk of an embolic episode increases significantly for patients receiving a mechanical aortic
valve replacement without warfarin therapy, and (2) patients with a mechanical aortic valve
and an increased risk factor such as atrial fibrillation should receive aspirin. He further
opines that Springer, Rizzo, and Solis knew or should have known when she was
discharged on October 20 that her warfarin therapy had been discontinued while in the
hospital on October 17, and knew or should have known the probable consequences of
her discharge without proper anticoagulation and monitoring. 
          Following her discharge on October 20, Johnson suffered a stroke on November 16. 
Shadoff’s report states that he “is quite certain that the stroke . . . was an embolic event
with the embolus arising from the mechanical aortic valve prosthesis.” He further opines
that the event “was caused by lack of appropriate coagulation in a clinical circumstance
where anticoagulation with warfarin is absolutely indicated.” He opines that “the breach
of the standard of care owed by Springer, Rizzo, and Solis / Cardiology Associates of
Lubbock,


 as well as Lubbock Heart Hospital and its nurses resulted in Johnson’s stroke.” 
He further opines as follows:
If Ms. Johnson had been appropriately anticoagulated, more likely than not
a stroke would not have occurred. In the absence of the stroke occurring, I
would have expected Ms. Johnson to recuperate from her surgery and have
had overall improvement in her functional status. 
 
          Solis, Rizzo, and Cardiologists of Lubbock, P.A. contend Shadoff’s report is deficient
because he “lumps” them together and assigns each of them the same duties and
obligations. According to Shadoff’s report, Johnson was under the care of attending
cardiologists Solis, Rizzo, and Cardiologists of Lubbock, P.A. while receiving treatment at
Lubbock Heart Hospital. As such, he opines they shared responsibility for Johnson’s care. 
His report names the individual treating physicians, states what standard of care they
should have provided and how they failed to provide that care. Accordingly, we conclude
that grouping Solis, Rizzo, and Cardiologists of Lubbock, P.A. together under the relevant
standard of care does not render Shadoff’s report inadequate simply because the same
standard of care is applied to each. See In re Stacy K. Boone, P.A., 223 S.W.3d 398, 405-06 (Tex.App.–Amarillo 2006, no pet.) (holding single standard of care applied to defendant
doctors and physician’s assistant sufficient because all were involved in administering
treatment). 
          The cases relied upon by Solis, Rizzo, and Cardiologists of Lubbock, P.A. are
inapposite. See Kettle v. Baylor Medical Center at Garland, 232 S.W.3d 832, 838-39
(Tex.App.–Dallas 2007, no pet.); Gray v. Chca Bayshore L.P., 189 S.W.3d 855, 859
(Tex.App.–Houston [1st Dist.] 2006, no pet.); Taylor v. Christus Spohn Heath Sys. Corp.,
169 S.W.3d 241, 246 (Tex.App.–Corpus Christi 2004, no pet.); Rittmer v. Garza, 65
S.W.3d 718, 722-23 (Tex.App.–Houston [14th Dist.] 2001, no pet.); Whitworth v.
Blumenthal, 59 S.W.3d 393, 396 (Tex.App.–Dallas 2001, pet. dism’d). 
          In Kettle and Gray, the appellate courts held the expert reports were deficient
because they failed to give an explanation of the treatment required to fulfill the applicable
duty. Kettle, 232 S.W.3d at 838-839 (report merely stated physicians had a duty to
diagnose and treat patient’s condition); Gray, 189 S.W.3d at 859 (report stated only that
physicians and nursing staff had duty to monitor). Here, Shadoff’s report states the
standard of care, the clinical indicators that should have prompted treatment (patient with
newly implanted aortic mechanical prosthesis and history of atrial fibrillation), and the
treatment that should have been administered (warfarin therapy with a prescribed low dose
aspirin) to satisfy the duty of care. 
          Recognizing that an expert report must contain a standard of care for each
defendant, Taylor does not expressly prohibit applying the same standard of care to more
than one health care provider if, as in the present case, they all owed the same duty to the
patient. See Taylor, 169, S.W.3d at 245-46. Rittmer does not apply because the appellant
admitted the report failed to meet the causation element while the report lacked specificity
as to the standard of care applicable to different portions of surgery performed by two
physicians. 65 S.W.3d at 722-23. In Whitworth, the report completely failed to identify any
particular defendant to which it applied. 59 S.W. 3d at 398. Here, Shadoff’s report offers
specific guidance as to what should have been done differently by Solis, Rizzo, and
Cardiologists of Lubbock, P.A. to meet their individual duty of care. See Palacios, 46
S.W.3d at 880. In sum, we cannot say the trial court abused its discretion by finding
Johnson’s expert report constituted a good faith effort to set forth the applicable standard
of care for Solis, Rizzo, and Cardiologists of Lubbock, P.A. See Boone, 223 S.W.3d at
405-06. 
          Neither can we say that the trial court erred by finding Johnson’s expert report met
the breach and causation requirements as to Solis, Rizzo, and Cardiologists of Lubbock,
P.A. Having opined as to their duty of care and the care required to fulfill that duty, Shadoff
opines these Appellants breached their duty by failing to coordinate her care, prescribe an
anticoagulation therapy of warfarin and aspirin on discharge, schedule a subsequent blood
test to monitor anticoagulation, or establish an outpatient plan for such treatment. As a
result, Shadoff opines Johnson suffered an embolic event, or stroke, with the “embolus
arising from the mechanical aortic valve prosthesis” due to lack of appropriate
anticoagulation.



          Here again, the report adequately informs Solis, Rizzo, and Cardiologists of
Lubbock, P.A. of the specific conduct Johnson calls into question. That the report also
includes these defendants with Springer does not render its discussion of the alleged
breaches inadequate. The Shadoff report links the harm to the breach in a manner that
is not merely conclusory. See Boone, 223 S.W.3d at 406-07; Wells, 202 S.W.3d at 467. 
While Solis, Rizzo, and Cardiologists of Lubbock, P.A. disagree with the amount of detail
in the report, an expert report required by § 74.351(a) need not be formal and its
information need not meet the evidentiary requirements required in a summary judgment
proceeding or at trial. Palacios, 46 S.W.3d at 879. We conclude the trial court did not
abuse its discretion by finding the Shadoff report constitutes a good faith effort to inform
Solis, Rizzo, and Cardiologists of Lubbock, P.A. of the specific conduct called into question
and provides a sufficient basis to conclude that the claims against them have merit. 
          For the first time on appeal, Cardiologists of Lubbock, P.A. also assert Johnson’s
report is technically deficient because the report mentions “Cardiologists Associates of
Lubbock” and not the named defendant in the suit, “Cardiologists of Lubbock, P.A.” In
addition, Solis also asserts that, even if vicarious liability is being asserted by Johnson
against Cardiologists of Lubbock, P.A., a proper expert report has not been provided to
Solis. The record does not reflect that these arguments were plead or presented to the
trial court for a ruling. To preserve error for appeal, a party must make a timely, specific
objection or motion to the trial court that states the grounds for the ruling sought with
sufficient specificity and complies with the rules of evidence and procedure. See Tex. R.
App. P. 33.1(a). If an argument is presented for the first time on appeal, it is waived. Id.;
Marine Transport Corp. v. Methodist Hospital, 221 S.W.3d 138, 147 n.3
(Tex.App.–Houston [1st Dist.] 2006, no pet.).
          Accordingly, this issue is overruled. 
 CONCLUSION
          Having overruled Medical Group’s issues, we affirm the trial court’s order.
 
                                                                                      Patrick A. Pirtle

                                                                                            Justice 

 



Quinn, C.J., concurs in the result.